# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 17, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0368-MR

JACKIE BOWE                                                                          APPELLANT

ON APPEAL FROM MONROE CIRCUIT COURT
V.                        HONORABLE DAVID L. WILLIAMS, JUDGE
NO. 18-CR-00101

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Monroe Circuit Court jury convicted Jackie Bowe of three counts of use of a minor in a sexual performance and being a second-degree persistent felony offender. Following the recommendation of the jury, the trial court sentenced Bowe to twenty years' imprisonment. He now appeals as a matter of right.[1]

On appeal, Bowe raises four issues. First, Bowe argues that the trial court erred in denying his motion for directed verdict on the use of a minor in sexual performance charges. Second, Bowe argues that he was entitled to a hearing on his motion to dismiss trial counsel. Third, Bowe asks us to

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of ... imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

overturn our long-standing rule prohibiting the admission of a party's offer to take a polygraph test into evidence. Finally, Bowe claims that he was substantially prejudiced by the admission of certain testimony under KRE[2] 404(b). We reject each of Bowe's arguments and affirm his conviction and sentence.

## I. FACTUAL BACKGROUND

Certain facts in this case are undisputed. Bowe lived together with his wife, Brandi Shepherd (Brandi), and her four children—two boys and two girls—in Gamliel, Kentucky. On April 18, 2016, the two girls, A.G. and B.G., were left in Bowe's care.[3] Brandi worked the night shift at the local Smuckers plant, and the boys left to stay the night with relatives. Bowe and the girls remained at home to prepare for A.G.'s birthday party, which was the following day. Soon after Brandi and the boys left, Brandi's sister, Lisa, and her daughter, M.B., came over to deliver a birthday cake.[4] M.B. asked to spend the night with her cousins, so Lisa left her at Bowe's house.

All parties agree that, at some point in the evening, Bowe and the girls played a series of games while they were scantily clad. The factual dispute in this case concerns who initiated the games and the degree of sexual conduct that occurred during the games.

---

[2] Kentucky Rules of Evidence.

[3] A.G. was ten years old on the night in question. B.G. testified that she was in fifth grade and was either eight or nine years old.

[4] M.B. was ten years old at the time of the incident.

M.B. testified that Bowe initiated the games and came up with the rules. According to M.B., they began by playing a card game in the living room. Per Bowe's rules, each person drew a card. Whoever had the high card had to remove an article of clothing. M.B. recalled that she drew the first high card and removed her shorts. A.G. next drew the high card and removed her top. M.B. alleged that Bowe told them that it was against the rules to cover themselves with their discarded clothing but allowed the girls to cover themselves with their arms. By the game's end, M.B. remembered that she was sitting in her underwear, A.G. was completely naked, Bowe was in his boxers and an undershirt.

After the card game, M.B. alleged that Bowe locked the front door. From there, everyone got dressed and the party continued to the back of the home. There they played another game: "dare or double-dare." In this game, each person took turns issuing dares to one another. Each person was also required to remove an article of clothing on their turn. M.B. testified that the dares included Bowe sitting on A.G.'s shoulders while nude, A.G. sitting on Bowe's back, and someone having to moon someone else. At the end of this game, M.B. claimed that Bowe and all of the girls were completely naked.

The first round of the dare game ended when M.B. and A.G. left to use the bathroom. The girls proceeded to watch a movie in the living room and B.G. fell asleep on the couch. M.B. and A.G. went to Bowe's room after the movie ended where they played another round of the dare game. M.B. testified that the game became more sexually explicit at this point. She testified that

3

Bowe told the girls that the game could get dirtier if they wanted. She recalled Bowe performing jumping jacks while nude. She testified that A.G. dared her to kiss Bowe on the lips, which she did. Finally, she stated that someone dared her to "pleasure herself." When she said that she did not know how, M.B. claimed that Bowe offered to teach her. When she refused, Bowe did not press the issue.

M.B. further testified that she and A.G. watched pornographic videos with Bowe. She stated that Bowe showed them videos on "xxx.com" and taught the girls how to delete the browser history on the phone. M.B. remembered that Bowe would fast forward the videos in order to reach the sex scenes. M.B. also testified that she asked Bowe about certain parts of the videos and he explained what was happening to her. Finally, she stated that she noticed Bowe put his hand in his pants as they watched the videos. At trial, she demonstrated how Bowe was "messing with himself" by using a pen to mimic his actions.

A.G. recounted a similar series of events as her cousin. She testified that they played card games and "adult truth or dare" after her mother left. She recalled that Bowe initiated the dare game, came up with the rules, and that Bowe had his shirt and pants off. A.G. had significant difficulty remembering the events of that night or her statement to detectives. She testified that she remembered someone mooning someone else but could not recall sitting on Bowe or Bowe sitting on her. Further, A.G. only testified about playing the

4

dare game with Bowe prior to watching the movie. A.G. did not testify regarding any of the events in Bowe's bedroom after the movie.

B.G. similarly remembered very little about that night. She remembered someone suggesting they play adult truth or dare but had no memory of the rules or the card game. B.G. recalled sitting in the living room when everyone took their clothes off. She did not, however, remember any specific dares or remember speaking to detectives about the events.

Bowe's narrative of that evening changed across his statements. Initially, Bowe denied that he participated in any games. Kentucky State Police Detective Nick Davis interviewed Bowe the day after the birthday party. During this interview, Bowe claimed that he was watching a movie in the living room when he noticed that the girls had gone quiet in the back of the house. When he went to their bedroom, he told Det. Davis that he found them sitting on the floor only wearing sports bras. He chastised them, told them to clothe themselves and to leave the door open. Afterward, he claimed that he fell asleep and woke up at 4 a.m. to finish getting ready for the birthday party before his wife came home.

When pressed by Det. Davis, Bowe admitted to playing truth or dare with the girls. However, he denied that stripping was a rule of the game. He claimed that he had recently taken a shower and remained dressed only in boxers afterwards. He claimed that the only time the girls were undressed around him was when he found them in their room in their sports bras.

5

Bowe recalled several specific dares. He stated that someone dared M.B. to kiss him, but he turned his face so that she only kissed his cheek. He testified that he did sit on A.G. shoulders, but he was in his boxers rather than nude. He acknowledged that he heard one of the girls talk about "pleasuring themselves," but claimed that his response about showing M.B. how to masturbate was sarcastic.

Regarding the pornography, Bowe denied watching pornographic videos or masturbating in the presence of the girls. According to Bowe, the girls snuck into his room while he was in the bathroom and found his phone. When he came out, he saw them watching a pornographic video that he had been watching alone. And though Bowe admitted to playing games with the girls in his underwear, he consistently denied that any person was naked, that he watched pornography with the girls, or that he masturbated in front of the girls.

On June 21, 2018, the Monroe County Grand Jury returned an indictment charging Bowe with one count of sexual abuse in the first degree, three counts of use of a minor in a sexual performance, and three counts of promoting a sexual performance by a minor.[5] Prior to trial, Bowe was also charged with being a second-degree persistent felony offender in a superseding indictment. On the basis of the foregoing testimony, the jury found Bowe not guilty of sexual abuse, but guilty of three counts of use of a minor in a sexual

---

[5] The Commonwealth dismissed the three promotion charges on the morning of trial.

performance. During the penalty phase, the jury further found Bowe guilty of one count of PFO in the second degree. The jury recommended a total sentence of ten years, enhanced to twenty years by operation of the PFO statute. The court accepted the jury's recommendation and sentenced Bowe accordingly.

Additional facts are included below as necessary.

## II. ANALYSIS

### A. The trial court did not abuse its discretion in denying Bowe's motion for a directed verdict.

Bowe asserts that he was entitled to a directed verdict on each count of use of a minor in a sexual performance because the Commonwealth failed to prove that any "performance" occurred. This issue is preserved by Bowe's motion for a directed verdict of acquittal following the close of the Commonwealth's case and by Bowe's renewed motion at the end of his case. We disagree that the court erred.

We review a trial court's ruling on a motion for directed verdict for abuse of discretion.[6] The standard for abuse of discretion is whether the court acted in a manner that was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[7] In considering a defendant's motion for a directed verdict, the trial court "must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the

---

[6] *Commonwealth v. Benham*, 816 S.W.2d 186,187-88 (Ky. 1991).

[7] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

7

Commonwealth, and leave questions of weight and credibility to the jury."[8]  As such, on appeal we must determine whether "it would be clearly unreasonable for the jury to find guilt."[9]

"A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes, or induces a minor to engage in a sexual performance."[10]  KRS 531.300(5) defines "performance" to include "any other visual representation before an audience."  A "performance" is a "sexual performance" if it "includes sexual conduct by a minor."[11] "Sexual conduct," as is relevant here, means:

> b) Physical contact with, or willful or intentional exhibition of the genitals.
>
> d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph or other visual representation, exclusive of exposure portrayed in matter of a private family nature not intended for distribution outside the family.[12]

In *Gilbert v. Commonwealth*, this Court clarified that a "sexual performance" under KRS 531.300 is not limited to a performance for public

---

[8] *Acosta v. Commonwealth*, 391 S.W.3d 809 (Ky. 2013).

[9] *Benham*, 816 S.W.2d at 187 (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983)).

[10] Kentucky Revised Statute "KRS" 531.310.

[11] KRS 531.300(6).

[12] KRS 531.300(4).

consumption or commercial gain.[13] There, a stepfather forced his three stepdaughters to strip naked and stared at them until he dismissed them. He claimed that his actions were a form of family discipline that did not involve a sexual performance. We concluded that the stepfather's acts went beyond ordinary discipline and indicated his prurient interest in the stepdaughters.

Bowe asserts that, unlike the stepfather in *Gilbert*, his conduct does not demonstrate any sort of sexual interest in the girls. He focuses on a portion of M.B.'s testimony in which she stated that he only looked at their eyes during the games. Under Bowe's theory, this fact shows that he was not an "audience" to any obscene display of the girls' bodies and, as a result, the Commonwealth did not prove that a "sexual performance" occurred.

But we cannot view a single statement of M.B. in isolation. Rather, we must view all of the evidence as a whole. Here, all three children testified that they played a variant of truth or dare that required them to strip naked in front of Bowe. Both the children and Bowe agree that Bowe participated in this game while in a state of undress. Two of the children testified that Bowe initiated both the dare game and the strip card game. Moreover, those two children testified that Bowe came up with the rules, which included a rule prohibiting the girls from covering themselves with their clothing.

On balance, the jury heard testimony that Bowe induced or authorized the girls to play games that required them to display their naked bodies, forced them to come into physical contact with each other and himself, and involved

---

[13] 838 S.W.2d 376 (Ky. 1991).

an escalating series of lewd and sexual conduct. While Bowe's own testimony contradicted many of the children's statements, it is the role of the jury to make credibility determinations. Notwithstanding M.B.'s single statement that Bowe only looked at the girls' eyes, the jury was entitled to draw the inference that Bowe engineered this scenario to compel the children to behave in a manner that he found sexually appealing. Thus, we conclude that the trial court did not err in denying Bowe's motion for a directed verdict.

**B. The trial court did not err in refusing Bowe's request to dismiss trial counsel.**

Bowe contends that the trial court failed to adequately consider his request for new counsel. At the final pre-trial conference, during which Bowe requested the appointment of new counsel to represent him, the following exchange occurred:

> **DPA**[14]: Your honor, this is Mr. Berry's case. I've spoke to Mr. Bowe this morning. Apparently, he would like to request that the court appoint him a different attorney. Apparently, Mr. Berry and him got into some sort of a disagreement about his case.
>
> **Court**: Well, he doesn't get the right to choose his attorney.
>
> **DPA**: I am aware, I just wanted to—
>
> **Court**: Mr. Berry is a competent attorney.
>
> **Bowe**: Your honor, we about had a fight. It's a big conflict, I can't—
>
> **Court**: Well you just need to comport your behavior.

---

[14] Department of Public Advocacy. Bowe appeared alongside different DPA counsel for the pre-trial conference.

**Bowe**: It wasn't me, it was him.

**Court**: Well, I—

**Bowe**: Your honor, look he told me, and I'm going to be polite about it, but he told me screw you. I mean, I'm not, I don't feel like he needs to be representing me. He doesn't even like talking to me about my case. He's not been to talk to me about it.

**DPA**: That's not true.

**Bowe**: Well, he come and asked me to sign ten years, and I told him no, and he got mad at me… I'm not trying to choose my counsel, your honor. I don't feel like he's got the best, my best interests, you know. I apologize to the court.

**Court**: Well, alright, when he comes back, I'll let him appear in this case, and see what he has to say about it. See what Mr. Berry has to say about it.

**Commonwealth**: We have a trial date.

**Court**: When is it set for?

**Clerk**: April 10th.

**Court**: Well, we are going to go ahead with the trial. You just have to make up with him.

Both the Kentucky Constitution and the United States Constitution grant criminal defendants the right to counsel, but "an indigent defendant is not entitled to the appointment of a particular attorney, and a defendant who has been appointed counsel is not entitled to have that counsel substituted unless adequate reasons are given."[15] A defendant bears the burden of showing good

---

[15] *Grady v. Commonwealth*, 325 S.W.3d 333, 341 (Ky. 2010) (quoting *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky. 2005)).

11

cause requiring the appointment of substitute counsel.[16]  Good cause for substitution exists when there has been a complete breakdown of communications between counsel and defendant; a conflict of interest; or counsel's continued representation would prejudice the legitimate interests of the defendant.[17]  On appeal, we review a trial court's ruling on a motion to substitute counsel for abuse of discretion.[18]

The thrust of Bowe's argument is that our decision in *Deno* requires a trial court to hold a "bona-fide thorough hearing" when the defendant moves to substitute trial counsel.  Bowe relies on a recent Court of Appeals decision, *Garren v. Commonwealth*, which interpreted *Deno* to contain an *implicit hearing requirement*.[19]  We agree that a defendant is entitled to state the grounds for their motion to substitute counsel on the record, but we reject the notion that an independent, evidentiary hearing is required in every case.  Based on our review of the record, we conclude that the trial court provided Bowe with an adequate opportunity to be heard.

Our case law affords a criminal defendant an opportunity to voice the rationale supporting their motion for new counsel.  Importantly, "so long as the trial court allows the defendant to state on the record the reasons why he seeks substitution of counsel," the trial court retains the discretion to tailor the scope

---

[16] *Deno*, 177 S.W.3d at 759.

[17] See Id. (quoting *Baker v. Commonwealth*, 574 S.W.2d 325, 326–27 (Ky. App. 1978)).

[18] *Id.*

[19] No. 2019-CA-000027-MR, 2019 WL 5681185 (Ky. App. Nov. 1, 2019).

of such hearing on a case-by-case basis.[20]  In *Deno*, a criminal defendant claimed that his attorney had lied to him, ignored his input regarding trial strategy, and failed to keep him informed about his case.[21]  In response to the defendant's allegations, the trial court allowed Deno's attorney to respond to the allegations and inquired into certain specific allegations.  On appeal, we held that the trial court provided the defendant with an adequate hearing.

*Deno*, however, does not provide a one-size-fits-all procedure for handling motions to substitute counsel.  The trial court in *Deno* further investigated specific allegations of inadequate assistance by counsel.  And in cases where the defendant raises specific and legitimate claims of a conflict of interest or inadequate performance, it may be necessary to allow counsel to respond or for the court to ask specific questions regarding the attorney-client relationship. However, if the defendant's assertions are vague, untrustworthy, or frivolous, the trial court may exercise its discretion and resolve the motion in a cursory manner.

In this case, Bowe raised two issues with counsel's performance.  First, he claimed that his attorney had not visited with him to talk about the case. This claim was refuted by Bowe's independent DPA counsel and contradicted by Bowe's other statements.  Second, he claimed that he and counsel had a heated argument regarding his refusal to accept a plea deal.  He alleged that counsel told him "screw you" and he believed that counsel did not have his

---

[20] *Grady*, 325 S.W.3d at 346.

[21] *Deno*, 177 S.W.3d at 756.

best interests in mind. Taking Bowe's claims at face value, we cannot say that this event raises a legitimate inference that an irreconcilable conflict existed. An exchange of harsh words in a moment of frustration, absent other indicia of a conflict of interest or attorney ineffectiveness, does not necessarily render an attorney-client relationship irreparably tainted. To hold otherwise would risk diluting the good cause standard to nullity. As a result, we conclude that the trial court afforded Mr. Bowe with an adequate opportunity to be heard.

## C. The trial court correctly ruled that Bowe's offer to take a polygraph test was inadmissible.

Bowe next argues that the trial court erred in allowing the Commonwealth to redact the portion of his interview with Detective Davis in which he offered to take a polygraph test. We review a trial court's decision to admit or exclude evidence for abuse of discretion.[22]

The rule that evidence of polygraph examinations and results is inadmissible is well-settled and long-standing.[23] Similarly, a party's offer to take a polygraph or refusal to take a polygraph is inadmissible.[24] We exclude such statements whether the person taking, offering to take, or refusing to take the examination was the accused or another witness.[25]

---

[22] *English*, 993 S.W.2d at 945.

[23] *See e.g.*, *Ice v. Commonwealth*, 667 S.W.2d 671, 675 (Ky. 1984); *Perry v. Commonwealth ex. rel. Kessinger*, 652 S.W.2d 655 (Ky. 1983); *Conley v. Commonwealth*, 382 S.W.2d 865, 867 (Ky. 1964).

[24] *See Stalling v. Commonwealth*, 556 S.W.2d 4 (Ky. 1977) (refusal to take polygraph); *Penn v. Commonwealth*, 417 S.W.2d 258 (Ky. 1967) (offers to take).

[25] *Ice*, 667 S.W.2d at 675.

Bowe acknowledges that this rule is binding but asks this Court to reconsider our prior case law and adopt a rule permitting the accused to enter statements containing an offer to take a polygraph. We decline to do so.

"Stare decisis is a doctrine which has real meaning to this Court."[26] Although "the doctrine of stare decisis does not commit us to the sanctification of ancient [or relatively recent] fallacy,"[27] we will faithfully apply precedent unless "sound reasons to the contrary" justify departure.[28] Only in cases where a common law rule has proven to be anomalous, unworkable, or contrary to public policy, will we overturn settled law.[29]

The common law rule prohibiting introduction of offers or refusals to take a polygraph exam does not merit reconsideration. The rule has been consistently applied in the Commonwealth for the better part of a century. Moreover, sound reasons support the exclusion of such statements. In essence, the rule serves as a prophylactic against the jury making credibility determinations based on an unsound premise. The rule prevents the accused's credibility from either being bolstered or attacked by reference to evidence that, if it existed, would be a faulty indicator of his or her truthfulness. As such, we affirm the trial court's exclusion of Bowe's offer to take a polygraph examination.

---

[26] *Gilbert v. Barkes*, 987 S.W.2d 772 (Ky. 1999).

[27] *Morrow v. Commonwealth*, 77 S.W.3d 558, 559 (Ky. 2002).

[28] *See Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998) (Stephens, C.J. concurring) (quoting *Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984)).

[29] *D & W Auto Supply v. Dept. of Revenue,* 602 S.W.2d 420, 424 (Ky. 1980).

**D. The trial court did not abuse its discretion in admitting other acts evidence under KRE 404(b).**

Finally, Bowe contends that the introduction of M.B.'s testimony regarding his allegedly showing the girls pornography while masturbating was inadmissible evidence of other bad acts pursuant to KRE 404(b). Further, he claims the Commonwealth failed to provide timely notice of their intent to introduce such evidence per KRE 404(c).

We begin with the notice issue. KRE 404(c) requires the prosecution to give the defendant "reasonable pretrial notice" of its intention to use KRE 404(b) evidence in its case-in-chief. The purpose of the notice requirement is to give the defense "an adequate opportunity to investigate the factual basis for evidence of such misconduct to deal with the dangers of unreliability and prejudice... ."[30]

Whether notice was provided within a reasonable time depends on the facts of a given case. Here, the Commonwealth provided Bowe notice of its intent to introduce M.B.'s statements one day-and-a-half prior to trial. Before trial, Bowe managed to file a response to this motion, which recites many of the same objections he asserts on appeal. Moreover, Bowe was aware that allegations regarding his exposing the girls to pornography was at issue in the case because he responded to Det. Davis's questions on the subject. Finally,

---

[30] Evidence Rules Study Committee, Kentucky Rule of Evidence – Final Draft, p. 27 (Nov. 1989); *see also* FED. R. EVID. 404, Advisory Committee Note to 1991 Amendment ("The Amendment to Rule 404(b) adds a pretrial notice requirement in criminal cases and is intended to reduce surprise and promoted early resolution on the issue of admissibility.").

16

we have previously held that notice within days of trial was reasonable where the defendant received actual notice and managed to respond.[31] On balance, we conclude that Bowe received reasonable notice of the Commonwealth's intent to introduce the testimony.

Moving to KRE 404(b), we further conclude that the trial court did not abuse its discretion in admitting M.B.'s testimony. KRE 404(b) generally prohibits the introduction of evidence of other wrongs or acts to show "action in conformity therewith." But the rule sets out two exceptions. First, other acts evidence is admissible if offered for "some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident… ."[32] Second, if the evidence of other act(s) is "so inextricably intertwined with other evidence essential to the case that the separation of the two could not be accomplished without serious adverse effect on the offering party," then the evidence may be admitted.[33]

Here, we cannot conclude that the evidence was so inextricably intertwined with the circumstances of the investigation such that its exclusion would have significantly prejudiced the Commonwealth. If the testimony had been excluded, the girls' testimony, as well as Mr. Bowe's statements, provided sufficient support for the use of minor in a sexual performance charge. Thus, KRE 404(b)(2) is inapplicable.

---

[31] *See Dant v. Commonwealth*, 258 S.W.2d 12, 21-22 (Ky. 2008).

[32] KRE 404(b)(1).

[33] KRE 404(b)(2).

17

That being said, the evidence is relevant to establishing the intent or motive underlying Bowe's charged conduct. KRS 531.310 required the Commonwealth to prove that Bowe asked the girls to display themselves in a sexual, obscene way. M.B.'s testimony regarding the pornography and masturbation supports an inference that the rationale underlying Bowe's conduct—the creation and initiation of the games—was to induce the girls into performing sexually suggestive or lewd acts. Further, M.B.'s testimony presents a narrative of escalation. What began as removing clothing became (allegedly) scantily clad physical contact, kisses on the cheek, and dares to masturbate. Considered alongside the testimony as a whole, M.B.'s statements support an inference that Bowe used the videos to familiarize the girls' with sex and induce performances of sexual conduct. While we recognize that testimony of this sort is certainly harmful to Bowe's case, that harmfulness does not override its connection to Bowe's motive or intent that evening. Therefore, we hold that the trial court did not abuse its discretion in admitting the 404(b) testimony.

### III. CONCLUSION

For the foregoing reasons, the Monroe Circuit Court's judgment is hereby affirmed.

All sitting. All concur.

18

COUNSEL FOR APPELLANT:

Emily Holt Rhorer
Department of Public Advocacy

COUNSEL FOR APPELLEES:

Daniel Jay Cameron
Attorney General of Kentucky

Lauren Rachel Lewis
Assistant Attorney General