James Anthony DENO, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–SC–000233–MR.

Supreme Court of Kentucky.

Sept. 22, 2005.

Rehearing Denied Dec. 22, 2005.

---

Donna L. Boyce, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, James Anthony Deno, was indicted by a Jessamine county grand jury for rape in the first degree and for failing to register as a sex offender. Prior to trial, the latter charge was severed because of its prejudicial effect. At Appellant's trial for rape, the jury found him guilty and recommended a sentence of twenty years. The trial court entered a judgment consistent with the jury's recommendation. Appellant appeals to this Court as a matter of right[1] asserting four claims of reversible error: (1) that the trial court erred when it informed Appellant he had no right to hybrid representation; (2) that the trial court erred when it held an inadequate hearing on Appellant's pro se request for substitute counsel; (3) that Appellant was unfairly prejudiced when the trial court admitted evidence regarding Appellant's refusal to voluntarily provide biological specimens; and (4) that the trial court erred when it refused to instruct the jury on sexual misconduct. Based on Appellant's first claim of error, we reverse and remand for a new trial.

On April 5, 2003, the victim, J.M.,[2] was at Appellant's trailer with her boyfriend, Kevin Elder. J.M. and Elder were there to visit with Elder's friends Chris Coleman and Chris's father, Tim Coleman. The Colemans were staying with Appellant. Although J.M. knew the Colemans, she had never met Appellant nor had she ever been to Appellant's home. That evening, J.M., Kevin Elder, the Colemans, and Appellant drank beer and watched a movie. J.M. testified that the Colemans and Appellant also smoked marijuana. Eventually, Chris Coleman went to bed and Appellant, Tim Coleman, J.M., and Elder stayed up to play cards. J.M. testified that she then began taking shots of whiskey. She estimated that over the course of the evening she drank five or six beers and took four to six shots of whiskey. J.M. became intoxicated, vomited, and then passed out on Appellant's couch in the living room. Elder testified that he was under the impression that Appellant also found a spot on the floor to sleep.

J.M. said that throughout the night she slipped in and out of consciousness. She stated that she awoke at one point to find a male on top of her penetrating her vagina. J.M. became scared and confused and tried to stop the man on top of her by rolling over, but she was unable to do so.

---

1. KY. CONST. § 110(2)(b).

2. J.M. will be used to protect the victim's anonymity.

J.M. said at one point she heard Appellant's voice beside her telling her to be quiet.

Around dawn the following morning J.M. testified that she woke up on the floor. She said her shirt and bra were pulled up exposing her breasts and her pants and panties were pulled down below her knees. J.M. was confused and became hysterical because she was unaware of how she ended up on the floor with her clothes as they were. When Elder awoke he saw J.M.'s condition but was unable to get J.M. to tell him what had happened. Elder testified that he saw Appellant awake, sitting on the couch. Elder said he confronted Appellant about J.M. but that Appellant denied having done anything. J.M. testified that she went to the bathroom and wiped off what she believed to be semen. Then J.M. and Elder left Appellant's home in Elder's car. In the car Elder asked J.M. if Appellant had raped her and J.M. said yes.

Chris Coleman testified that when J.M. and Elder left Appellant's trailer, Appellant told the Colemans a different story about what had happened. He said he was sleeping on the couch when J.M. pulled him to the floor and started to initiate sexual intercourse. Appellant said that when J.M. saw Elder sleeping on the other side of the room, she realized that she had intercourse with the wrong man. Although Appellant claims that J.M. believed that it was Elder who was the one she had sexual intercourse with, J.M. never testified to that effect. J.M. only said that when she woke up the next morning, she had hoped the man that had been on top of her was her boyfriend. However, J.M. stated unequivocally that she did not consent to have sex with anyone that night.

Elder then took J.M. back to her apartment in Lexington. At J.M.'s apartment, her roommate, Shannon Drowen, and Drowen's boyfriend tried to calm J.M. However, when they discovered scratches on J.M.'s back, J.M. became even more hysterical. Elder, Shannon, and Shannon's boyfriend took J.M. to the University of Kentucky Medical Center. Kim Bennett, a nurse practitioner and a sexual assault nurse examiner, examined J.M. and collected forensic evidence. Bennett photographed two scratches on J.M.'s lower back and discovered a small tear near the bottom of J.M.'s vagina. Lab analysts found semen on a vaginal smear and on a vaginal swab taken from J.M. J.M.'s blood alcohol level that afternoon (approximately 3:00 p.m.) was .06%. Detective Tim Marcum from the Jessamine County Sheriff's Department came to the medical center to begin an investigation.

Two days later Detective Marcum and another deputy visited Appellant at his home. Marcum asked Appellant to voluntarily submit a biological specimen for comparison. Appellant refused. Appellant states that his refusal was based on the fact he wanted to speak to an attorney first. The following day, Marcum returned to Appellant's home with a search warrant and to collect the biological specimens at a nearby hospital. The DNA of the semen from J.M.'s examination matched that of Appellant.

Appellant was indicted for first-degree rape and for failing to register as a sex offender. The latter charge was severed due to its prejudicial effect. On the first day of trial, Appellant made a pro se motion in limine for substitute counsel and in the alternative, a pro se motion to be co-counsel with the attorney who was currently representing him. Both motions were denied by the trial judge. Appellant was convicted of first-degree rape, and the jury recommended a sentence of twenty years. On March 5, 2004, the trial judge

entered a judgment consistent with the jury's recommendation.

■ Appellant's first claim is that the trial court erred when it informed Appellant that he had no right to hybrid representation. The Kentucky Constitution guarantees a criminal defendant the right "to be heard by himself and counsel." [3] This right cannot be denied to a criminal defendant.[4] The wording of Section 11 of the Kentucky Constitution, unlike that of the similar provision which appears in the United States Constitution,[5] guarantees a criminal defendant the right: (1) to represent himself pro se; (2) to be represented by counsel; or (3) to have hybrid representation.[6] In *Wake v. Barker*, we held that a criminal defendant may make a limited waiver of counsel.[7] When a defendant makes such a waiver, the defendant's attorney's duty would then be confined to rendering services desired by the defendant as long as they are within the normal scope of counsel services.[8] However, hybrid representation may only be granted to a defendant who makes a timely and unequivocal request for such representation.[9]

■ In the case at bar, the Appellant informed the judge of his dissatisfaction with his appointed attorney after motions in limine had been heard. The Appellant advised the judge of how he had only met with his attorney a couple of times and felt uninformed regarding his defense. The Appellant said he felt information he relayed to his attorney had been disregarded. Among other things, the Appellant said he felt he had been lied to, ignored, and was not going to receive a fair trial. The trial judge allowed the Appellant's attorney to respond to the allegations made against her. The trial judge then addressed some of the more specific complaints in regard to the use of an expert and the extent of the attorney's contact with Appellant. The trial judge then held that it appeared that the Appellant's attorney had prepared the case sufficiently and that the trial strategy, although unappealing to the Appellant, was within the discretion of his attorney. Appellant told the trial judge that he had reviewed the evidence and that he felt he could show J.M. was lying by pointing to inconsistencies in her story. Appellant's attorney then asked Appellant if he would like to try the case himself or if he would want her to "sit there with him and answer questions as standby counsel." Appellant said he wanted to be co-counsel but admitted that he would need some additional time to prepare. The trial judge informed Appellant that he had only two options, "you can't go co-counsel. You either represent yourself or [your attorney] represents you." The trial judge made this statement twice. The Appellant's attorney then asked Appellant if he wanted to represent himself. Appellant, being informed that he only had two choices, said he wanted an attorney but not the one he currently had. The trial judge denied Appellant's request stating Appellant's attorney had performed her job adequately.

■ A request to proceed pro se or with counsel in a limited fashion must be

3. KY. CONST. § 11.

4. *Chenault v. Commonwealth*, 282 Ky. 453, 138 S.W.2d 969 (1940).

5. U.S. CONST. amend. V.

6. *Hill v. Commonwealth*, 125 S.W.3d 221 (Ky. 2004).

7. 514 S.W.2d 692 (Ky.1974).

8. *Id.*, 514 S.W.2d at 696.

9. *Moore v. Commonwealth*, 634 S.W.2d 426, 430 (Ky.1982).

timely and unequivocal.[10] In the case at bar, Appellant's request was timely and unequivocal considering the circumstances under which the request was made. A request for hybrid representation is timely if made before meaningful trial proceedings have begun.[11] Appellant proffered his request in the trial judge's chamber before the jury was selected. Although an earlier request would have been preferable, the request was made before any part of the trial had begun. Therefore, the request was timely.

■ Appellant's request was also unequivocal given the circumstances. A request for hybrid representation is unequivocal if the defendant specifies the extent of the services he desires.[12] Neither a request for different counsel nor a request to make a closing argument is enough.[13] During the discussion that took place in the trial judge's chambers, Appellant's attorney asked Appellant if he wanted to serve as co-counsel, and Appellant acknowledged that as his request. Appellant told the trial judge first he did not want to represent himself because he was not a trial attorney. However, the trial judge informed Appellant, incorrectly, that Appellant had only two choices regarding his representation, and that acting as co-counsel was not one of them. Thereafter, Appellant changed his request on the mistaken belief that he was unable to act as co-counsel during his trial. Appellant's un-equivocal request dissipated as a result of the misinformation provided to him by the trial judge. Thereafter Appellant, knowing he was insufficiently skilled to continue pro se, requested a different attorney to represent him. This request was also denied by the trial judge.

A defendant must be given his/her constitutional right (1) to represent himself pro se; (2) to be represented by counsel; or (3) to have hybrid representation.[14] In this case, because the trial judge misstated the law, it is necessary for this Court to reverse and remand for a new trial.[15]

■ Another aspect of a defendant's limited waiver of counsel or request to proceed pro se is the requirement that the trial court hold a *Faretta* hearing.[16] When a defendant makes a request to proceed pro se or for hybrid representation, the principles of *Faretta* become applicable.[17] *Faretta* requires: (1) that "the trial court must hold a hearing in which the defendant testifies on the question of whether the waiver is voluntary, knowing, and intelligent;" (2) that "during the hearing, the trial court must warn the defendant of the hazards arising from and the benefits relinquished by waiving counsel;" and (3) that "the trial court must make a finding on the record that the waiver is knowing, intelligent and voluntary."[18] In the case at bar, the trial judge did not determine whether Appellant's waiver was voluntary, knowing and intelligent because of misin-

---

10. *Moore,* 634 S.W.2d at 430.

11. *Baucom v. Commonwealth,* 134 S.W.3d 591 (Ky.2004) (citing *United States v. McKenna,* 327 F.3d 830, 844 (9th Cir.2003) (holding that a request is timely if made before the jury is selected or empanelled)).

12. *Soto v. Commonwealth,* 139 S.W.3d 827, 857 (Ky.2004) (citing *Wake,* 514 S.W.2d at 696).

13. *Soto* 139 S.W.3d at 857.

14. *Hill,* 125 S.W.3d at 225–26.

15. *Id.,* at 592.

16. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Hill,* 125 S.W.3d at 226.

17. *Moore,* 634 S.W.2d at 430.

18. *Hill,* 125 S.W.3d at 226.

formation. Therefore, upon retrial, if the Appellant decides to make a timely and unequivocal[19] request to proceed pro se or for hybrid representation, the trial court should follow such a request with a *Faretta* hearing.[20]

Appellant's second claim of error is that the trial court held an inadequate hearing in regard to Appellant's pro se motion for substitute counsel. This issue is addressed here because if Appellant, on retrial, makes a request for substitute counsel, instead of a timely and unequivocal request for hybrid representation or to represent himself pro se, then a different procedure must be taken.[21]

■■■■ An indigent defendant is not entitled to the appointment of a particular attorney,[22] and a defendant who has been appointed counsel is not entitled to have that counsel substituted unless adequate reasons are given.[23] When a defendant requests substitution of counsel during trial, "the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."[24] Good cause has been described as: (1) a "complete breakdown of communications between counsel and defendant;" (2) a "conflict of interest;"

and (3) that the "legitimate interests of the defendant are being prejudiced."[25] Whether good cause exists for substitute counsel to be appointed is within the sound discretion of the trial court.[26]

■■■ When Appellant presented his concerns regarding his representation, the trial judge allowed Appellant to fully describe in detail his objections with his attorney. The trial judge then allowed Appellant's attorney to respond to the allegations. The trial judge questioned both Appellant and his attorney regarding specific allegations of a breakdown in communication. Appellant asserted that his attorney had not kept him informed regarding the defense strategy, that his attorney had lied to him regarding the use of an expert, and that his attorney had ignored and rebuffed his ideas in regard to discrediting the victim. Appellant also stated that he felt his attorney was not invested in the case and Appellant believed he was not going to receive a fair trial. Appellant's attorney responded to the allegations Appellant made by detailing her contact with Appellant. She also described the decision not to use an expert witness and her reasons for her trial strategy. The trial judge's investigation into Appellant's allegations

19. *Soto,* 139 S.W.3d at 857 (citing *Robards,* 789 F.2d at 384 (A trial court may grant an untimely request but such grant is within the sound discretion of the trial judge.))

20. *Hill,* 125 S.W.3d at 227.

21. *See, Shegog v. Commonwealth,* 142 S.W.3d 101, 105 (Ky.2004) (*Faretta* 's principles do not control because Appellant did not assert the desire to represent himself.)

22. *Baker v. Commonwealth,* 574 S.W.2d 325, 326–27 (Ky.App.1978) (citing *Hargrove v. Commonwealth,* 362 S.W.2d 37 (Ky.1962)).

23. *See, Baker,* 574 S.W.2d at 325; *Fultz v. Commonwealth,* 398 S.W.2d 881,‍ 882 (Ky. 1966) (citing *Brown v. United States,* 264 F.2d

363 (D.C.Cir.1959); *United States ex rel. Robinson v. Fay,* 348 F.2d 705 (2nd Cir.1965)).

24. *Shegog,* 142 S.W.3d at 105 (citing *United States v. Calabro,* 467 F.2d 973, 986 (2nd Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973)). *See also United States v. Welty,* 674 F.2d 185, 188 (3rd Cir.1982); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976); *United States v. Young,* 482 F.2d 993, 995 (5th Cir.1973).

25. *Baker,* 574 S.W.2d at 326

26. *Pillersdorf v. Department of Public Advocacy,* 890 S.W.2d 616, 622 (Ky.1994).

was thorough. The trial judge held that Appellant's attorney had sufficiently performed her job and there was not good cause for her substitution. The trial judge followed the correct procedure for addressing Appellant's concerns with his representation. There was no error in the trial judge's ruling denying Appellant substitute counsel.

 Next, Appellant argues that the trial court erred when it admitted evidence of his refusal to submit to a voluntary specimen comparison. Appellant argues that the Commonwealth misused his legitimate assertion of his right to remain silent and not to provide self-incriminating evidence outside the presence of counsel. The Commonwealth asserts that the right against self-incrimination extends only to evidence of a testimonial nature but not to Appellant's refusal to submit to the test. It appears from the record that this issue was not properly preserved. However, as we are reversing for retrial on other grounds, we deem it expedient to address this as it is likely to arise again.

At trial, evidence was admitted that Appellant refused the request of a detective to submit a biological specimen. Appellant refused stating that he wanted to speak to an attorney first. In his summation, the Commonwealth's Attorney made much of Appellant's refusal to voluntarily submit the specimen as follows:

> Then when the officer goes out to talk to the defendant, does he say willingly, "yes, I'll be happy to submit to the examination that you're requesting"? No, he says, "No, I won't," and causes

the detective to have to go get a search warrant and they come back out and then they get the blood and samples that they needed from him. Does that sound like somebody who's in the right? Or does that sound like somebody who, again, is trying to avoid the consequences of his actions? Does that sound like an opportunistic rapist that took advantage of a young girl, 18 year old college freshman who's got a lot going for her, for him to just take her and put her on the floor of that trailer and without her knowledge or consent forcing himself into her? That's what this case is about.

The Commonwealth is correct in its assertion that the Fifth Amendment is not implicated here. The Fifth Amendment protection applies to evidence of a testimonial nature. It does not apply to physical evidence such as bodily fluids, breath, and hair.[27] Thus, Appellant's claim based on the Fifth Amendment is not well-taken.

We have addressed a similar issue in the context of driving while under the influence of alcohol. In *Commonwealth v. Hager*,[28] we held that no Fifth Amendment or due process violation occurs when evidence of a DUI suspect's refusal to submit to a breath or blood test is admitted as evidence of his guilt. In *Hager*, this Court adopted the view of the United States Supreme Court in *South Dakota v. Neville*[29] which found no constitutional violations in the use of evidence of refusal to submit to an alcohol intoxication test. The issue in *Neville* was whether South Dakota's statute authorizing evidence of refusal as evidence of guilt was unconstitutional,

---

**27.** *Newman v. Stinson,* 489 S.W.2d 826, 829 (Ky.1972). *See Sholler v. Commonwealth,* 969 S.W.2d 706 (Ky.1998) (self-incrimination protection does not extend to demonstrative, physical or real evidence); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

**28.** 702 S.W.2d 431 (Ky.1986).

**29.** 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (9th Cir.1983).

and the Supreme Court said no. Kentucky has a similar statute. KRS 189A.105 provides that the fact of refusal to submit to a blood, breath or urine test may be used at trial against the defendant as evidence of guilt under the DUI statute. Thus, the use of refusal as evidence of guilt in a DUI case is indisputable. But this was not a DUI case and the biological specimen was not of an evanescent nature.

A proper analysis of this issue is under the Fourth Amendment and Section 10 of the Constitution of Kentucky. Section 10 provides that "the people shall be secure in their persons, houses, papers, and possessions from unreasonable search and seizure." We have held on many occasions that a warrantless search is presumed to be unreasonable.[30] An attempted warrantless search and seizure of Appellant's bodily fluids occurred in this case in non-exigent circumstances. The officers came to Appellant's home and asked him to voluntarily submit a biological specimen for comparison. Appellant refused and the fact of his refusal was used against him at trial.

We have been unable to discover Kentucky authority addressing the precise issue presented here, i.e. whether the refusal of one, other than a DUI suspect, to submit to a warrantless seizure of bodily fluids may be introduced at trial and argued as evidence of guilt. However, we have discovered two recent decisions of the United States Court of Appeals for the Ninth Circuit that seem directly on point. In *United States v. Phillips,*[31] the defendant was on trial for homicide and assault arising out of an alcohol-related automobile accident. At trial the Government used the defendant's pre-arrest refusal to submit to a blood test as evidence of her guilt. On appeal, the defendant argued that the refusal to supply a blood alcohol sample before her arrest could not be used as evidence at her trial because it violated her Fourth Amendment protection against unreasonable searches and seizures. Analyzing the claim, the Court stated that the taking of a breath test or blood sample is a search within the meaning of the Fourth Amendment and that refusal to consent to a warrantless search is privileged conduct that cannot be considered as evidence of criminality. Quoting from *Newhouse v. Misterly,*[32] the Court said:

> Thus, "where an underlying right to refuse such a blood test is present, it would be improper to draw adverse inferences from failure of the accused to respond to a request for a blood test because the accused would thereby be penalized for exercising his rights to refuse the test."

The *Phillips* Court distinguished *South Dakota v. Neville*[33] on the basis that the defendant in that case was under lawful arrest when the blood test was requested. It noted that the Government has a right to compel a blood sample after or contemporaneous with a lawful arrest, and that a defendant has no Fourth Amendment right to refuse such a test. The Court concluded as follows:

> Unless there is probable cause and a valid arrest, a defendant's refusal to submit to a blood test cannot be used as evidence of guilt.

---

**30.** *Colbert v. Commonwealth,* 43 S.W.3d 777 (Ky.2001).

**31.** 976 F.2d 739 (9th Cir.1992) (unpublished disposition).

**32.** 415 F.2d 514, 518 (9th Cir.1969).

**33.** 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

In *Duran v. Thurman*,[34] reversing the denial of habeas corpus, the Court considered a similar question:

> The prosecution informed the jury two different times that Duran declined to provide blood and urine samples to the police when he turned himself in. It is undisputed that no warrant had been issued authorizing the taking of the samples. Therefore, Duran's passive refusal to consent to the warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing. The prosecution's repeated reference to Duran's refusal to provide blood and urine samples violated Duran's Fourth Amendment rights.[35]

In *U.S. v. Prescott*,[36] an apartment-dweller refused officers entry when she learned they did not have a search warrant. At trial, this fact was admitted as evidence against her. The Court held that it was prejudicial error to permit the government to prove, as evidence of the offense charged, that Prescott declined to unlock the door when the officers did not have a warrant.

> When ... the officer demands entry but presents no warrant, there is a presumption that the officer has no right to enter, because it is only in certain carefully defined circumstances that lack of a warrant is excused.... One cannot be penalized for passively asserting this right, regardless of one's motivation.

■ In the case at bar, at the time the detectives requested the specimen, the Appellant was not under arrest. Upon his refusal to comply with the officers' request, a search warrant was obtained and the specimen collected the next day. Nev-ertheless, the fact of Appellant's initial refusal was presented as evidence of his guilt and argued as such by the Commonwealth. We believe this to be a violation of Appellant's rights under the Fourth Amendment and Section 10 of the Constitution of Kentucky, and upon retrial, an objection to the use of such evidence and argument should be sustained.

■ Finally, Appellant asserts error with the trial court's refusal to instruct the jury on sexual misconduct. During the trial, the Appellant requested that the jury instructions include not only the charged offense of first-degree rape under KRS 510.040, but also, as a lesser included crime, sexual misconduct. The Commonwealth responded to Appellant's instruction request with the argument that the commentary of the sexual misconduct statute, KRS 510.140, states that it is intended to apply only to cases where the defendant and victim are of a young age. The trial court denied Appellant's request and the jury received an instruction only on the charge of first-degree rape. The Appellant now argues that it was erroneous for the trial judge to instruct the jury to convict Appellant for first-degree rape or acquit. Appellant points to the commentary to KRS 510.140 which states that the sexual misconduct statute also acts as "a useful plea-bargaining tool for the prosecution in certain cases even though some degree of forcible compulsion/incapacity to consent may be present."

A person is guilty of sexual misconduct when "he engages in sexual intercourse or deviate sexual intercourse with another person without the latter's consent."[37] Although this statute would seem to apply to the case at bar, "our 'longstanding rule' is

---

**34.** 106 F.3d 407 (9th Cir.1997) (an unpublished disposition).

**35.** *Id.*

**36.** 581 F.2d 1343, 1350–51 (9th Cir.1978).

**37.** KRS 520.140(1).

that this statute was intended to apply only in cases where the victim is fourteen or fifteen and the defendant less than twenty-one, or when the victim is twelve-to-fifteen and the defendant is less than eighteen years of age."[38] This rule was developed from reading KRS 510.140 as interpreted by its commentary.[39] Therefore, because the victim was of majority age and the Appellant was of majority age, the trial judge's refusal to instruct the jury on sexual misconduct was not erroneous.

Moreover, the evidence does not indicate that such an instruction would be appropriate. While the victim was profoundly intoxicated, there is no indication that Appellant was similarly impaired. Thus, if he engaged in sexual intercourse with the victim while she was so impaired and without her consent, KRS 510.040 is the appropriate statute.

Based on the error made by the trial judge regarding hybrid representation, this case is reversed and remanded for a new trial.

COOPER, GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

---

**38.** *Johnson v. Commonwealth,* 864 S.W.2d 266, 277 (Ky.1993); *See also, Cooper v. Commonwealth,* 550 S.W.2d 478 (Ky.1977).

**39.** *Cooper,* 550 S.W.2d at 480 ("according to KRS 500.100, the commentary accompanying the code may be used as an aid in construing the provisions of the code.")