RENDERED: FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1553-MR

ELMO STEWART                                                    APPELLANT

v.          APPEAL FROM WARREN CIRCUIT COURT
            HONORABLE JOHN R. GRISE, JUDGE
            ACTION NOS. 18-CR-00445 & 18-CR-00446

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE: Elmo Stewart appeals from an order of the Warren Circuit Court

denying his motion to withdraw his guilty plea. We conclude that the trial court

did not clearly err in finding that his guilty plea was knowing and voluntary. As a

result, the court did not abuse its discretion by denying his motion to withdraw the

plea. The other issue raised by Stewart is not properly presented in this appeal. Hence, we affirm.

The relevant facts of this matter are not in dispute. On April 18, 2018, a Warren County grand jury returned an indictment charging Stewart with one count each of attempted murder, first-degree wanton endangerment, second-degree assault, and being a persistent felony offender in the first degree (PFO I). The grand jury separately indicted Stewart on one count of possession of a handgun by a convicted felon and an additional PFO I count arising from the same events. The trial court granted the Commonwealth's motion to sever the indictments and scheduled a trial on the handgun possession charge and second PFO I charge to begin on April 11, 2019.

On April 10, 2019, the parties appeared in court at a pre-trial hearing. At the hearing, Stewart's counsel advised the court that she and Stewart had a disagreement over the presentation of evidence at trial. In particular, Stewart wanted to introduce body-cam footage taken by Officer Larry Zuniga at his arrest. Counsel later explained that Stewart believed the video would show that Officer Zuniga would not have been able to see the gun until after it hit the ground. Counsel stated that the video would not be helpful because it only displayed the aftermath of the shooting and not the shooting itself. Counsel also stated she

believed that the footage would portray Officer Zuniga in a more sympathetic light and would not have supported Stewart's "choice of evils" defense.

The trial court declined to conduct a *Faretta*[1] hearing to determine whether Stewart would be allowed to act as his own counsel in introducing the video. The court advised Stewart that it would not second-guess his counsel's strategic decisions. However, the court stated that it would revisit that ruling during trial if Stewart still wanted to introduce the video over counsel's objections.

Later that same day, the parties advised the court that they had reached a plea agreement on all charges. The Commonwealth agreed to dismiss one of the PFO I charges, as well as the attempted murder and second-degree assault charges, in exchange for Stewart's guilty plea to first-degree wanton endangerment, possession of a handgun by a convicted felon, and PFO I.[2] The Commonwealth further agreed to recommend a total sentence of ten years' imprisonment.

During the plea colloquy, Stewart stated that he understood he would not be eligible for probation or parole, but he was unclear about how it affected his ability to earn good-time credit. The trial court also directly questioned Stewart

---

[1] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[2] Stewart entered an unconditional guilty plea to the handgun-possession and PFO I charges, and he entered an *Alford* plea to the wanton endangerment charges. *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

about why he was changing his plea. Stewart responded that he was concerned about the possibility of getting a longer sentence at trial. He also stated that the plea was in his best interests and that he had not been pressured into accepting the plea. Stewart advised the court that he still disagreed with his counsel about introduction of the body-cam video. But he stated that his disagreement with counsel was not the reason he was accepting the plea. Stewart further added that he was otherwise satisfied with the assistance of his counsel. Based on Stewart's representations at the hearing, the trial court accepted his guilty plea.

On April 23, 2019, Stewart filed a *pro se* motion seeking to withdraw his guilty plea. Based on the motion, the trial court appointed conflict counsel for Stewart. The court also scheduled a hearing on Stewart's motion to withdraw his guilty plea for August 8, 2019. At the hearing, Stewart testified that his counsel had not properly advised him about his parole eligibility. Stewart stated that he did not understand that his sentence would be subject to an 85% parole eligibility.

Stewart further testified that he felt compelled to accept the plea after counsel refused to present the Zuniga body-cam video at trial. Stewart also asserted that his counsel failed to share a different police body-cam video with him. In addition, Stewart testified that his counsel told him to tell the court that he was accepting the plea because he was afraid of the possible sentence rather than because he disagreed with counsel over introduction of the body-cam video. On

cross-examination, Stewart acknowledged that he told the trial court that he was accepting the guilty plea because he was afraid of the possible sentence. He also admitted that he was still afraid of the possible sentence.

Stewart's counsel testified that she and Stewart discussed the admission of the Zuniga video prior to trial. Counsel had initially agreed with Stewart to introduce the video at trial. But prior to the April 10, 2019, hearing, counsel reviewed the video with other attorneys in the public defenders' office. Counsel and the other attorneys came to the conclusion that the video would not be helpful to Stewart's defense.

Counsel also testified that she researched Stewart's eligibility to receive good-time credit while incarcerated. She advised Stewart that, if he earned the full amount of credit to which he was eligible, then he would be eligible for parole after serving about six and a half years, less any jail credit for time served. Counsel also testified that she advised Stewart that the court would not accept the guilty plea if his only reason for making it was his disagreement over introduction of the body-cam video. But counsel added that she did not believe that this disagreement was the primary reason Stewart accepted the plea.

Following the hearing, the trial court denied Stewart's motion to withdraw his guilty plea. In written findings entered on August 30, 2019, the trial court found that Stewart made a knowing and voluntary decision to plead guilty.

The court noted its lengthy plea colloquy, at which the court and counsel explained Stewart's concerns about parole eligibility.  Consequently, the trial court found no credible evidence that Stewart was coerced or that counsel misinformed him on any substantial matter.  Thereafter, the trial court entered a judgment sentencing Stewart in accordance with his guilty plea.  This appeal followed.

On appeal, Stewart contends that his guilty plea was not entered knowingly, intelligently, and voluntarily.  RCr[3] 8.10 states that "[a]t any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted."  For a guilty plea to be valid, it must be "entered intelligently and voluntarily."  *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001).  In evaluating whether a plea is voluntary, and if counsel's performance is implicated, a trial court is required to

> consider the totality of the circumstances surrounding the guilty plea and juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington*[4] inquiry into the performance of counsel:
>
>> A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components:  (1) that counsel made errors so serious that counsel's performance fell

---

[3] Kentucky Rules of Criminal Procedure.

[4] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

> outside the wide range of professionally
> competent assistance; and (2) that the
> deficient performance so seriously affected
> the outcome of the plea process that, but for
> the errors of counsel, there is a reasonable
> probability that the defendant would not
> have plead guilty, but would have insisted
> on going to trial.

*Id.* at 486-87 (citations omitted). Reviewing the totality of circumstances revolving around a guilty plea "is an inherently factual inquiry which requires consideration of 'the accused's demeanor, background, and experience, and whether the record reveals that the plea was voluntarily made.'" *Id.* at 487 (quoting *Centers v. Commonwealth*, 799 S.W.2d 51, 54 (Ky. App. 1990)). Additionally, "the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken[.]" *Id.* (internal quotation marks omitted) (quoting *Kotas v. Commonwealth*, 565 S.W.2d 445, 447 (Ky. 1978)).

We review a trial court's finding that a plea was voluntary under a clearly erroneous standard. *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004). "A decision which is supported by substantial evidence is not clearly erroneous." *Id.* If the plea was voluntary, a trial court's ruling on a motion to withdraw a voluntary guilty plea is reviewed under an abuse of discretion standard. *Bronk*, 58 S.W.3d at 487. To amount to an abuse of discretion, the trial court's decision must be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007) (citing

-7-

*Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1995)). Absent a "flagrant miscarriage of justice," the trial court will be affirmed. *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

Stewart again argues that he was compelled to plead guilty due to his counsel's refusal to present the Zuniga body-cam video as he requested. Stewart also maintains that his counsel knew the Commonwealth failed to provide the body-cam video from Officer Helbig, a second officer on the scene, but failed to raise the issue with him or the trial court prior to trial. And Stewart contends that his counsel misadvised him about his parole eligibility, incorrectly informing him that he would be eligible for parole in six and a half years. Based on these circumstances, Stewart argues that he was not capable of making a reasoned choice whether to plead guilty.

However, the trial court extensively addressed all of these issues at the plea colloquy. The court asked Stewart if he was accepting the guilty plea only because of his disagreement with counsel over the body-cam video. Stewart answered that he was also afraid of the potential sentence he might receive should he go to trial. Stewart's counsel testified that he expressed these concerns even before the disagreement about the body-cam video.

In the current case, Stewart faced ten to twenty years on the handgun possession and PFO I charges. He also faced life imprisonment on the charges in

the other indictment.  Stewart told the trial court he was afraid of the longer term and wanted to ensure that he could be released.  With his plea, Stewart limited his potential imprisonment to a total of ten years.  While Stewart may have had other concerns about his counsel's strategic decisions, Stewart failed to show that these concerns made his decision to accept the guilty plea involuntary.[5]

Similarly, the trial court did not clearly err in finding that Stewart's counsel did not misadvise him about parole eligibility.  At the plea colloquy, Stewart expressed concerns that he would not be eligible to earn good-time credit while sentenced on his guilty plea.  After much discussion, the trial court stated that the sentence would not affect Stewart's ability to earn good-time credit.  Stewart has not shown that counsel inaccurately estimated potential parole eligibility with good-time credit and time served.  Stewart has not shown that any inaccuracies about his parole eligibility affected his decision to accept the guilty plea.

Finally, Stewart argues that the trial court erred by denying his request to act as hybrid counsel to present the body-cam video at trial.  He contends that the trial court was required to conduct a *Faretta* hearing to determine whether he

---

[5] We also note that the Helbig body-cam video was not introduced into the record, and Stewart does not allege that its content would have assisted his defense.  Thus, we are unable to consider whether Stewart was unfairly prejudiced by counsel's failure to review the video prior to trial.

could make a partial waiver of his right to counsel. When a defendant makes a request to proceed *pro se* or for hybrid representation, *Faretta* requires: (1) that "the trial court must hold a hearing in which the defendant testifies on the question of whether the waiver is voluntary, knowing, and intelligent"; (2) that "during the hearing, the trial court must warn the defendant of the hazards arising from and the benefits relinquished by waiving counsel"; and (3) that "the trial court must make a finding on the record that the waiver is knowing, intelligent and voluntary." *Deno v. Commonwealth*, 177 S.W.3d 753, 758 (Ky. 2005) (quoting *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky. 2004), *overruled on other grounds by Grady v. Commonwealth*, 325 S.W.3d 333 (Ky. 2010)).

In this case, the trial court declined to pre-judge counsel's strategic decisions without determining whether Stewart's partial waiver was knowing, voluntary and intelligent. However, a trial court is not always obligated to conduct a formal hearing whenever a defendant makes a *pro se* motion for substitution of counsel. *Schell v. Commonwealth*, No. 2006-SC-000662-MR, 2008 WL 203036, at *3 (Ky. Jan. 24, 2008).

> So long as the trial court allows the defendant to state on the record the reasons why he seeks substitution of counsel, the trial court may exercise discretion to determine how extensive the hearing needs to be in light of the factual circumstances of the individual case. In particular, where the defendant's allegations, even if assumed to be true, would not establish good cause for substitution of counsel, we would not mandate a

> procedure requiring the trial court to delve further by questioning defense counsel. This is especially true where doing so might expose defense strategy.

*Id.* at \*3 (citations omitted).

The trial court allowed Stewart to explain his concerns about counsel's unwillingness to introduce the body-cam video. Stewart did not allege that he had a complete breakdown of his relationship with counsel; only a disagreement over this one issue. The court was concerned that further inquiry into the matter would risk exposing trial strategy. And the court stated that it would consider allowing Stewart to introduce the body-cam video at trial if he still wanted to do so. Although we do not endorse this practice, we cannot find that the trial court's actions were outside of its discretion.

In any event, a voluntary guilty plea operates to waive all defenses other than that the indictment charges no offense. *Parrish v. Commonwealth*, 283 S.W.3d 675, 678 (Ky. 2009). For purposes of this appeal, Stewart is limited to issues relating to the validity of his guilty plea. *See Bishop v. Commonwealth*, 357 S.W.3d 549, 552-53 (Ky. App. 2011). We have already concluded that Stewart's disagreement with counsel over the body-cam video did not render his plea involuntary, notwithstanding his disagreement with counsel over the body-cam video. Therefore, the *Faretta* issue is deemed to be waived. *Id.* at 553.

Accordingly, we affirm the judgment of conviction by the Warren

Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky