RENDERED: FEBRUARY 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1265-MR

JOHNNIE WIDNER                                        APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM LETCHER CIRCUIT COURT<br>HONORABLE JAMES W. CRAFT, II, JUDGE<br>ACTION NO. 20-CR-00315 |

COMMONWEALTH OF KENTUCKY                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

JONES, JUDGE: Johnnie Widner appeals as a matter of right from the Letcher Circuit Court's final judgment following his conviction at a jury trial. The trial court sentenced Widner to an enhanced sentence of ten years' imprisonment after he was found guilty of being a convicted felon in possession of a handgun and of being a second-degree persistent felony offender. After a thorough review of the facts and the law, we affirm.

# I. BACKGROUND

On September 19, 2020, Trooper Jarrett Fields of the Kentucky State Police received a radio call from dispatch regarding the presence of a suspicious vehicle at Gordon Park in Letcher County. When the trooper arrived to investigate, he saw a vehicle matching the description given to the dispatcher. The vehicle, a silver passenger car, was parked with its left turn signal on, the driver's door open, and a person's legs jutting out from the open door. Trooper Fields approached the vehicle and found Widner asleep in the driver's seat. No other individuals were in the vehicle, and the vehicle's keys were in the ignition.

After rousing Widner and conversing with him, Trooper Fields ordered Widner to exit the vehicle. Trooper Fields eventually conducted a probable-cause search of the vehicle[1] and found a Smith & Wesson .32 caliber revolver, loaded with two rounds, in the unlocked glove compartment. Upon transporting Widner to the detention center based on what he would later describe as "other charges," the trooper learned Widner was a convicted felon. While Widner was cooperative throughout the encounter with Trooper Fields, he did not admit to owning the vehicle or the handgun. The vehicle had valid registration tags but was not registered in Widner's name.

---

[1] It is not clear from the record the exact grounds relied upon by the trooper to support the search. However, we need not dwell on this issue because the reasonableness of the trooper's search and seizure is not at issue in this case.

Next, the Letcher County grand jury indicted Widner on charges of being a convicted felon in possession of a handgun[2] and being a first-degree persistent felony offender (PFO).[3] At trial, the Commonwealth presented testimony from Trooper Fields which conformed to the aforementioned narrative. The Commonwealth also presented testimony from a deputy circuit clerk who stated Widner had been previously convicted in Letcher Circuit case number 06-CR-00207. The judgment in that case, entered on July 30, 2008, sentenced Widner to a five-year sentence, probated for five years. Furthermore, this probation period was to be served consecutively to Widner's conviction in Letcher Circuit case number 06-CR-00206; the judgment in 06-CR-00207 specified that its five-year probationary period would begin "when defendant is released from prison by parole or if conviction is reversed on appeal in 06-CR-206." (Record (R.) at 32.) Finally, the Commonwealth presented testimony from a probation and parole officer who testified that Widner served out his sentence in 06-CR-00206 on April 2, 2012, and he would have begun serving his five-year probation period in 06-CR-00207 the following day. The probation and parole officer then testified that Widner had a probation revocation hearing in 2015 due to an absconder warrant,

---

[2] Kentucky Revised Statutes (KRS) 527.040(2)(a), a Class C felony.

[3] KRS 532.080.

after which he was reinstated to probation.  According to the officer, Widner then served another four years on probation, which finally ended on May 23, 2019.

After hearing the evidence in the case, the jury convicted Widner of being a convicted felon in possession of a handgun and of being a second-degree PFO and recommended a sentence of ten years' imprisonment.  The trial court sentenced Widner in accordance with the jury's recommendation.  This appeal followed.

## II. ANALYSIS

Widner presents four separate issues on appeal.  First, he argues the trial court erred when it failed to conduct a proper *Faretta*[4] hearing.  Second, Widner contends the trial court erroneously failed to grant a mistrial when Trooper Fields testified that Widner was taken to the detention center on "other charges." Third, Widner argues Trooper Fields improperly commented on his pre-arrest silence, which denied him a fair trial.  Fourth, and finally, Widner contends the trial court erroneously failed to grant a directed verdict.  We will consider each issue in turn.

Widner first argues that the trial court erroneously failed to explore the appropriate parameters for hybrid counsel or to issue specific warnings or findings as required in a proper *Faretta* hearing.  In the months leading up to trial,

---

[4] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

despite being represented by appointed counsel, Widner habitually filed *pro se* motions with the trial court. Eventually, the Commonwealth objected to what it termed an "onslaught of far too many Pro Se Motions to list" (R. at 11) and moved the trial court to conduct a *Faretta* hearing.

In the pretrial hearing on the Commonwealth's motion, Widner's counsel opened the discussion by saying, "We're here on what looks like a *Faretta* hearing?" He continued by stating that Widner wanted to continue filing his motions and that *Faretta* may be implicated. Counsel then outlined Widner's three possibilities for representation: Widner could retain his appointed counsel, he could represent himself *pro se*, or he could have hybrid representation. Finally, Widner's counsel informed the court that Widner wanted to keep his appointed counsel, but he also wanted to be able to file his motions. The Commonwealth then expressed its own concerns, noting that Widner may not understand that he would be held to the standards of an attorney if he were to represent himself *pro se*. The Commonwealth also reiterated concerns about the confusion sown by Widner's *pro se* motion practice, pointing out that it had received the same motion filed multiple times within the span of just a few days.

In its resolution of the matter, the trial court told Widner that it wanted him to take an active role in his own defense, but all motions should come through one point to prevent confusion. The court asserted it "can't have motions coming

from all directions, and [defense counsel] is going to be that point." For future motions, the court asked Widner to "get together what you feel like needs to be done, and you send it to [defense counsel]." Widner responded, "I agree to that." The court then told Widner that defense counsel would "make the decision whether or not it's a valid motion, if it is a valid motion, the form and format it needs to be put into, and he will file it with the court." Again, Widner agreed with the court. At this point, defense counsel attempted to clarify whether this was going to be a hybrid counsel scenario. The trial court answered that it wanted defense counsel "to review everything and counsel with him, and then you all make the decision together as to what is properly before the court."

Concurrent with the constitutional right to counsel in criminal cases, the United States Supreme Court held in *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Hill v. Commonwealth*, 125 S.W.3d 221, 225 (Ky. 2004), *holding modified by Depp v. Commonwealth*, 278 S.W.3d 615 (Ky. 2009) (quoting *Faretta*, 422 U.S. at 817, 95 S. Ct. at 2532). The federal constitution gives a criminal defendant the right to counsel or to proceed *pro se*; however, "[t]he wording of Section 11 of the Kentucky Constitution, unlike that of the similar provision which appears in the United States Constitution, guarantees a criminal defendant the right: (1) to

represent himself pro se; (2) to be represented by counsel; or (3) to have hybrid representation." *Deno v. Commonwealth*, 177 S.W.3d 753, 757 (Ky. 2005) (citations omitted).

Procedurally, "[w]hen a defendant makes a request to proceed pro se or for hybrid representation, the principles of *Faretta* become applicable." *Id.* at 758 (citation omitted). The request to proceed *pro se* or by hybrid counsel must be unequivocal. *Moore v. Commonwealth*, 634 S.W.2d 426, 430 (Ky. 1982); *see also Deno*, 177 S.W.3d at 757-58. After receiving such a request, the trial court must thereafter conduct a *Faretta* hearing to ascertain whether the defendant's waiver of counsel is done knowingly and intelligently. *Depp*, 278 S.W.3d at 617. Widner's *Faretta* arguments are unpreserved; however, if a trial court violates the defendant's rights under *Faretta* or its progeny, the error is structural and requires reversal. *Baucom v. Commonwealth*, 134 S.W.3d 591, 592 (Ky. 2004).

Widner now contends that the trial court's hearing failed to comport with *Faretta*'s requirements, arguing that he was acting as a form of hybrid counsel, and the trial court should have informed him of the extent of services he could require from his counsel. In addition, also pursuant to *Faretta*, Widner contends the trial court failed to provide specific warnings before accepting his partial waiver of representation, and the trial court failed to issue a finding that Widner's waiver was knowing, intelligent, and voluntary. In its response, the

Commonwealth points out that Widner did not make an unequivocal request to represent himself *pro se* or to serve as hybrid counsel.

We agree with the Commonwealth. "A request to proceed pro se or with counsel in a limited fashion *must be timely and unequivocal*." *Deno*, 177 S.W.3d at 757-58 (emphasis added) (citation omitted). In the hearing on the Commonwealth's motion, the attorneys discussed the applicability of *Faretta* in an attempt to address Widner's penchant for filing his own motions. However, Widner readily agreed to submit his motions to his attorney for consideration instead. Most importantly, Widner *never* made an unequivocal request to serve as either his own counsel or as hybrid counsel. He simply wanted to file his motions, and he agreed when the trial court offered him a method to do so within the normal parameters of his existing attorney-client relationship. *Faretta* is not unequivocally invoked when a defendant merely asks to perform a task normally done by an attorney; *see id*. at 758 (emphasis added) (citations omitted) ("A request for hybrid representation is unequivocal if the defendant specifies the extent of the services he desires. Neither a request for different counsel *nor a request to make a closing argument is enough*."). Because Widner did not make an unequivocal request invoking *Faretta*, the trial court cannot be said to have erred in its application.

For his second issue on appeal, Widner argues the trial court erroneously denied his motion for a mistrial after Trooper Fields testified Widner was taken to jail on "other charges." Although the trial court admonished the jury to disregard the statement, Widner contends it nonetheless diluted his presumption of innocence, irreversibly tainting his trial. The Commonwealth disagrees, arguing Widner suffered no prejudice and the trial court's admonition cured any error.

We discern no error. "[A] mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Commonwealth v. Padgett*, 563 S.W.3d 639, 645 (Ky. 2018) (quoting *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004)). Here, there was no manifest necessity for a mistrial. "A jury is presumed to follow an admonition to disregard evidence[,] and an admonition is presumed sufficient to cure errors." *Parker v. Commonwealth*, 291 S.W.3d 647, 658 (Ky. 2009) (internal quotation marks and citation omitted). An admonition is only considered insufficient:

> (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant, or (2) when the question was asked without a factual basis and was inflammatory or highly prejudicial.

*Id*. (citation omitted). Despite Widner's claims to the contrary, Trooper Fields's reference to "other charges," a single oblique slip in his testimony, was not so

overwhelming, devastating, or inflammatory as to require the extraordinary remedy of a mistrial, and the trial court's admonition was sufficient to cure any error.

In his third issue on appeal, Widner contends Trooper Fields improperly commented on his pre-arrest silence, denying him a fair trial. The issue is not preserved; however, Widner requests review for palpable error under RCr[5] 10.26. "An error is palpable only if it is 'shocking or jurisprudentially intolerable.'" *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky. 2009) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)). To demonstrate palpable error, a party "must show a 'probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law.'" *Id.* (quoting *Martin*, 207 S.W.3d at 3).

Widner correctly cites *Baumia v. Commonwealth*, 402 S.W.3d 530 (Ky. 2013), for the proposition that a criminal defendant's pre-arrest, pre-*Miranda* right to remain silent may not be used against the defendant in the Commonwealth's case-in-chief. *Id.* at 536. However, "not every comment upon silence is reversible error." *Ragland v. Commonwealth*, 191 S.W.3d 569, 589 (Ky. 2006). For example, a detective may fairly comment upon a defendant's silence when it is in direct response to a question by the defendant's attorney on cross-

---

[5] Kentucky Rules of Criminal Procedure.

examination; *see, e.g.*, *Allen*, 286 S.W.3d at 227; *Coulthard v. Commonwealth*, 230 S.W.3d 572, 585 (Ky. 2007).

Here, on direct examination, the Commonwealth questioned Trooper Fields as follows:

> COMMONWEALTH: Now, did Mr. Widner make any statements whatsoever that night to you?
>
> TROOPER FIELDS: Not that I can recall, no.
>
> COMMONWEALTH: Do you remember asking him about the handgun?
>
> TROOPER FIELDS: I don't recall asking him. I don't remember.

There was no further inquiry on the subject in direct questioning. On cross-examination, Widner's counsel explicitly questioned Trooper Fields about whether Widner made statements about ownership of the vehicle or the handgun, to which the trooper responded that he did not remember asking those questions, and he did not write anything of the sort in his notes. When questioned on redirect, Trooper Fields testified that, if Widner had claimed the gun was his, or, alternatively, if Widner had denied the gun was his, he would have written those responses in his notes. Finally, the Commonwealth asked, "So to the best of your memory, he did not deny to you personally that that was his firearm?" Trooper Fields answered, "Yes, to the best of my memory."

-11-

A prosecutor should be careful not to invite a damaging inference from a defendant's silence. "*Miranda*[6] warnings contain an 'implicit assurance' that 'silence will carry no penalty[.]'" *Baumia*, 402 S.W.3d at 537 (quoting *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S. Ct. 2240, 2245, 49 L. Ed. 2d 91 (1976)). Nevertheless, we must consider that it was Widner's counsel who opened the door for further discussion when, on cross-examination, he asked whether Widner made any statements about owning the handgun. It was only on redirect that the Commonwealth elicited testimony from Trooper Fields which could be considered questionable, and then the Commonwealth made no other reference to it thereafter. Even assuming an error exists, we cannot consider it "shocking or jurisprudentially intolerable." *Allen*, 286 S.W.3d at 226. We discern no manifest injustice rising to the level of palpable error.

Finally, Widner contends the trial court erroneously failed to grant a directed verdict. The Kentucky Supreme Court has explained how a trial court should decide a directed verdict motion in the following way:

> On a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to

---

6 *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

-12-

the jury questions as to the credibility and weight to be given to such testimony.

*Hall v. Commonwealth*, 645 S.W.3d 383, 392 (Ky. 2022) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). "To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187).

Widner asserts he was entitled to a directed verdict on two separate grounds. First, he argues the Commonwealth failed to produce evidence that he had physical possession or ownership of the handgun. Throughout his trial, the basis of Widner's defense was that the vehicle was not registered to him, and there was no evidence that Widner even knew the handgun was in the glove compartment. Nonetheless, the Commonwealth successfully argued Widner possessed the handgun under a constructive possession theory.

Despite Widner's arguments, the facts of the case were sufficient to support a conviction based on constructive possession. "The person who owns or exercises dominion or control over a motor vehicle in which contraband is concealed, is deemed to possess the contraband." *Leavell v. Commonwealth*, 737 S.W.2d 695, 697 (Ky. 1987) (citing *United States v. Vergara*, 687 F.2d 57 (5th Cir. 1982)). We have applied *Leavell* to constructive possession of a firearm in a vehicle by a convicted felon. *Deboy v. Commonwealth*, 214 S.W.3d 926, 930 (Ky.

App. 2007). Even though Widner did not own the vehicle, the evidence showed he was in a position to "exercise[] dominion or control" over it. *Leavell*, 737 S.W.2d at 697. Widner was found in the driver's seat, with the keys in the ignition, and within reach of the unlocked glove compartment where the handgun was found. The trial court correctly denied the directed verdict motion because the Commonwealth produced "more than a mere scintilla of evidence" to support the charge. *Lackey*, 468 S.W.3d at 352 (quoting *Benham*, 816 S.W.2d at 187).

Second, Widner argues the Commonwealth failed to produce sufficient proof of one element of the PFO charge. The most relevant provision of the second-degree PFO statute requires the Commonwealth to prove the defendant was released on probation or parole "within five (5) years prior to the date of commission of the felony for which he now stands convicted[.]" KRS 532.080(2)(c)3. Widner testified under avowal that he served out his predicate offenses in 2012, more than five years before this incident in 2020. However, the Commonwealth produced testimony from a probation and parole officer that Widner was under probationary supervision until May 23, 2019. Furthermore, documents from the Justice and Public Safety Cabinet submitted by the Commonwealth show that Widner was on probation as late as April 3, 2017. (R. at 17.) Despite Widner's avowal testimony, the evidence of record sufficed to

establish the applicability of the PFO statute, and the trial court did not err in denying the directed verdict motion.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

EASTON, JUDGE, CONCURS.

LAMBERT, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Roy Alyette Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky