RENDERED: APRIL 29, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0380-DG

COMMONWEALTH OF KENTUCKY                                          APPELLANT

v.

ON REVIEW FROM COURT OF APPEALS
NO. 2017-CA-1927
DAVIESS CIRCUIT COURT NO. 15-CR-00005

JARED MCCARTHY                                                    APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

In *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), the United States Supreme Court altered the landscape in driving under the influence (DUI) investigations by announcing that the Fourth Amendment permits a warrantless breath test incident to an arrest for drunk driving, but not a warrantless blood test. For warrantless blood tests, the search is unreasonable under the Fourth Amendment unless valid consent is given or exigent circumstances justify the search. This appeal addresses the ramifications of Jared McCarthy's exercise of his constitutional right to refuse to take a blood test when stopped for DUI and ultimately convicted of that offense pursuant to Kentucky Revised Statute (KRS) 189A.010.

We conclude the trial court properly held that under *Birchfield* McCarthy's refusal to submit to a blood test could not be used to enhance his

criminal penalty for DUI and, under controlling Kentucky precedent, could not be used as evidence that he was guilty of DUI. The trial court erred, however, in allowing the Commonwealth to introduce the refusal evidence to explain to the jury the lack of scientific evidence as to McCarthy's blood alcohol content (BAC). Upon review of the record, we cannot conclude that the erroneous admission of that evidence was harmless beyond a reasonable doubt and thus affirm the Court of Appeals' decision reversing and remanding this case to the Daviess Circuit Court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2014 at 1:00 a.m., an Owensboro police officer stopped Jared McCarthy on suspicion of DUI. The officer administered a series of field sobriety tests and placed McCarthy under arrest.[1] The officer transported McCarthy to the hospital where he requested McCarthy submit to a blood test and informed McCarthy of the repercussions under KRS 189A.105(2)(a)1 for refusing the test. Specifically, the officer warned McCarthy that (1) if he refused the test, the fact of the refusal may be used against him in court as evidence of violating KRS 189A.010, the DUI statute, and (2) if he refused the test and was subsequently convicted of DUI under KRS 189A.010, then he would be subject to a mandatory minimum jail sentence twice as long as the

---

[1] McCarthy refused a preliminary breath test during the traffic stop prior to his arrest. Pursuant to KRS 189A.100, a person's refusal to take a preliminary breath test cannot be used against him in a court of law or in any administrative proceeding. McCarthy moved *in limine* to exclude any reference to this refusal and an agreed order was entered to that effect.

2

mandatory minimum jail sentence imposed if he were to submit to the test.[2] McCarthy refused the blood test.

Pretrial, McCarthy moved *in limine* to exclude any evidence of his refusal to take the warrantless blood test. Citing then-recently-decided *Birchfield v. North Dakota* as impacting KRS 189A.105(2)(a)1, he argued that a blood draw is a search of his person requiring a warrant and that he could not be deemed to have consented to the blood draw through statutory implied consent when facing a criminal penalty, namely additional jail time. McCarthy argued that his refusal to consent to a warrantless search,[3] could not be used against him as an aggravator for penalty purposes or as evidence at trial of the DUI offense.

The Commonwealth responded that *Birchfield* does not apply to KRS 189A.105 because, unlike the North Dakota and Minnesota implied-consent statutes analyzed in *Birchfield*, the Kentucky General Assembly did not create a

---

[2] McCarthy was indicted under KRS 189A.010(5)(d) for operating a motor vehicle while under the influence, fourth or subsequent offense within the last five years, aggravating circumstance. At the time of McCarthy's indictment, KRS 189A.010(5)(d) provided that "[f]or a fourth or subsequent offense within a five (5) year period, [the violator is] guilty of a Class D felony. If any of the aggravating circumstances listed in subsection (11) of this section are present, the mandatory minimum term of imprisonment shall be two hundred forty (240) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of release"; KRS 189A.010(11)(e) provided that "[r]efusing to submit to any test or tests of one's blood, breath, or urine requested by an officer having reasonable grounds to believe the person was operating or in physical control of a motor vehicle in violation of [KRS 189A.010(1)]" was an aggravating factor; and KRS 189A.010(8) stated that "[f]or a fourth or subsequent offense under this section, the minimum term of imprisonment shall be one hundred twenty (120) days, and this term shall not be suspended, probated, or subject to conditional discharge or other form of early release. For a second or subsequent offense, at least forty-eight (48) hours of the mandatory sentence shall be served consecutively." *See* 2010 Ky. Acts ch. 149.

[3] An exigent circumstance justifying the warrantless search was not discussed.

3

separate violation and criminal penalty for refusing the blood test, i.e., a freestanding offense which could be prosecuted regardless of whether the defendant was prosecuted for or found guilty of DUI. The Commonwealth noted that under KRS 189A.105, Kentucky's mandatory minimum term of imprisonment cannot attach until a conviction for DUI occurs, requiring the Commonwealth first prove the DUI, and if the defendant is found guilty, then prove his refusal. The Commonwealth also argued that because *Birchfield* did not disturb the civil penalties and evidentiary consequences of a refusal, the fact of McCarthy's refusal of the blood test could be used against him in court as evidence of violating KRS 189A.010, just as he was explicitly warned pursuant to KRS 189A.105. The Commonwealth further insisted that given common knowledge that scientific tests are often used as evidence in DUI cases, it should be allowed to explain to the jury why the Commonwealth did not have a scientific test as part of its proof against McCarthy.

After considering *Birchfield*, the trial court ruled in McCarthy's favor in terms of the implication of guilt and the enhanced penalty associated with the refusal. The circuit court concluded McCarthy's trial would proceed as a DUI prosecution without the aggravating circumstance. Specifically, the circuit court ruled that the Commonwealth (1) could not use McCarthy's refusal to take the warrantless blood test as evidence implying his guilt during its case-in-chief but could introduce the refusal to explain the absence of any scientific evidence to prove the DUI, and (2) could not use the refusal to enhance McCarthy's penalty if he were found guilty of DUI. As to McCarthy, the circuit

4

court ruled that McCarthy (1) could argue that the Commonwealth offered no scientific evidence of his guilt, but (2) could not comment that the absence of scientific evidence was due to the Commonwealth's failure to secure a warrant for his blood. The trial court did not allow questions about the warrant because issuance of a warrant is a question of law. McCarthy's first trial ended in a mistrial with a deadlocked jury. The trial court's rulings remained in effect for McCarthy's second trial.

At trial, Officer Fleury testified that he stopped McCarthy after observing his vehicle leave a bar parking lot and swerve across the roadway's centerline. McCarthy was driving and had three passengers. Officer Fleury testified that the car, as well as McCarthy himself upon his removal from the car, smelled of alcoholic beverages; that McCarthy slurred his speech a little bit; that McCarthy was a bit lethargic; and that McCarthy's cumulative performance on the field sobriety tests indicated that he was impaired. The jury saw the video of Officer Fleury stopping McCarthy and McCarthy performing the field sobriety tests. A search of the vehicle yielded three open containers of beer and prescription bottles of clonazapam and hydrocodone, prescribed for McCarthy. Officer Fleury did not open the containers to count the pills. Officer Fleury testified that the prescription labels contained a warning that they should not be used in combination with alcohol.

Officer Fleury testified that after arresting McCarthy, he transported McCarthy to the hospital for a blood draw, but McCarthy refused the draw.[4] On cross-examination, Officer Fleury also testified that he had never requested a search warrant for blood in a DUI case and did not even know whether he could request a warrant.[5] During deliberations, the jury asked to view the video again. The jury found McCarthy guilty of operating a motor vehicle while under the influence of alcohol and/or other substances, fourth offense within the last five years. The trial court followed the jury's recommendation and sentenced McCarthy to two years in prison, noting that under the statute McCarthy "must serve 120 days of his sentence."

McCarthy appealed to the Court of Appeals, arguing that the trial court erred (1) by allowing the Commonwealth to introduce evidence that McCarthy refused to submit to blood testing and then (2) by preventing him from countering that evidence by asking the police officer why he had not obtained a warrant for the blood test.[6] In response, the Commonwealth expounded on its arguments before the trial court that *Birchfield*'s holding is inapplicable to

---

[4] Although the trial court ruled that the Commonwealth could use McCarthy's refusal for the limited purpose of explaining the lack of scientific proof, an admonition was not requested.

[5] The Commonwealth did not object to this testimony. The Commonwealth objected when defense counsel asked Officer Fleury if he knew he could have obtained a warrant, whether he would have in fact done so.

[6] McCarthy also alleged the trial court erred by *sua sponte* giving the deliberating jury an *Allen* (term derived from *Allen v. United States,* 164 U.S. 492 (1896)) charge. The Court of Appeals rejected that claim of error, and McCarthy does not pursue it before this Court.

Kentucky's DUI statutes and that the Commonwealth is statutorily permitted to introduce evidence of McCarthy's refusal.

The Court of Appeals, addressing whether *Birchfield* is applicable to KRS 189A.105's sentence enhancement upon a DUI conviction, concluded an otherwise apparently relevant conclusion in then-recently-decided *Commonwealth v. Brown*, 560 S.W.3d 873 (Ky. App. 2018), was dicta; the *Brown* court stated that although the doubling of a mandatory minimum jail sentence is a criminal sanction, unlike the statutes examined in *Birchfield*, it lacks the coercive force presented by an additional criminal charge for refusing. Rejecting this reasoning, the Court of Appeals in this case concluded that *Birchfield* applied to KRS 189A.105; that McCarthy's refusal could not be used as evidence of guilt in the DUI prosecution; and considering *Deno v. Commonwealth*, 177 S.W.3d 753, 762 (Ky. 2005), and *Coulthard v. Commonwealth*, 230 S.W.3d 572, 582 (Ky. 2007), the Commonwealth improperly commented on McCarthy's refusal, especially in light of the trial court's ruling that McCarthy could not comment on the officer's failure to seek a search warrant. We granted discretionary review and, after careful consideration, affirm the Court of Appeals.

## ANALYSIS

McCarthy initially raised the issues before us by filing a motion *in limine* to exclude evidence of his refusal and the trial court ultimately entered an "Order Limiting Introduction of Refusal to Take Warrantless Blood Test." Neither McCarthy nor the court treated the matter as a suppression motion.

7

On appeal, however, McCarthy argued that evidence of his refusal should be "suppressed" and the Court of Appeals then analyzed the issues through the lens of a suppression motion. Although this is not a typical scenario where a government search has yielded evidence such as drugs, weapons or, most pertinently, a BAC result which the defendant asks the court to suppress, the officer's request did result in McCarthy's refusal and that refusal was evidence that the Commonwealth intended to use against him. Given that fact and that the taking of a blood sample in these circumstances is a search implicating Fourth Amendment rights, *Schmerber v. California*, 384 U.S. 757, 767-68 (1966), we conclude a defendant's refusal to allow such a search and his subsequent efforts to preclude the government from using that refusal as evidence against him may properly be addressed as a suppression motion.

Generally, when reviewing the trial court's decision on a suppression motion it is a two-part process and "we first review the trial court's findings of fact under the clearly erroneous standard." *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016). Here, the material fact upon which McCarthy's motion was based, McCarthy's refusal of the blood test, is not disputed. McCarthy's motion required the trial court, as a matter of law, to consider how *Birchfield* applied to McCarthy's refusal within KRS Chapter 189A, Kentucky's Driving Under the Influence statutory framework, particularly KRS 189A.105(2). Therefore, we review de novo the circuit court's conclusions of law. *Id.* A trial court's allegedly erroneous Fourth Amendment evidentiary rulings are reviewed under the "harmless beyond a reasonable doubt"

8

standard.  *Chapman v. California*, 386 U.S. 18 (1967); *Ward v. Commonwealth*, 587 S.W.3d 312, 331 (Ky. 2019).

The trial court's rulings were: (1) the Commonwealth could not use McCarthy's refusal to submit to a warrantless blood test to enhance his penalty if he was convicted of DUI; (2) the Commonwealth could not use McCarthy's refusal as evidence to imply his guilt; (3) the Commonwealth could introduce the refusal to explain why the Commonwealth lacked scientific evidence to prove the DUI; (4) McCarthy could comment on the fact the Commonwealth presented no scientific evidence of his guilt; and (5) McCarthy could not comment that the absence of any scientific evidence of his guilt was due to the Commonwealth's failure to secure a warrant for his blood.  The trial court's unexpressed conclusions of law encompassed in those rulings were: (1) because McCarthy has the constitutional right to refuse to submit to an illegal warrantless blood test, his lawful refusal to consent could not (a) serve as the basis of a criminal penalty or (b) be used as evidence of his guilt as prescribed by KRS 189A.105; (2) evidence of McCarthy's refusal was otherwise relevant because the Commonwealth, faced with proving McCarthy was driving under the influence, was entitled to let the jury know it did not have BAC evidence because McCarthy refused the blood test; and (3) even if the jury heard that the Commonwealth lacked objective scientific evidence of McCarthy's guilt because of his refusal to submit to a blood test, evidence as to whether the officer could have secured a warrant for the blood test was not admissible.

9

We begin with a review of pertinent KRS Chapter 189A statutes and the *Birchfield* decision.

## I. Kentucky's Implied-Consent Law

As the United States Supreme Court describes, the states' approach to combating drunk driving has evolved over time. *Birchfield,* 136 S. Ct. at 2166-70. Early DUI laws did not contain a BAC measure to define intoxication and case prosecution was largely dependent on a witness's observations that the defendant's behavior showed signs of intoxication. *Id.* at 2167. With scientific advancement in the understanding of BAC levels and their relationship to impaired driving, even in the absence of behavioral indications of impairment, states have defined the minimum BAC level at which a person is illegal to drive. *Id.* DUI laws have also evolved to criminalize use of other substances which may impair driving. *See, e.g.*, KRS 189A.010(1). In Kentucky,

> [a] person shall not operate or be in physical control of a motor vehicle anywhere in this state:
>
> (a) Having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle;
>
> (b) While under the influence of alcohol;
>
> (c) While under the influence of any other substance or combination of substances which impairs one's driving ability;
>
> (d) While the presence of a controlled substance listed in subsection (12) of this section [which includes hydrocodone] is detected in the blood, as measured by a scientifically reliable test, or tests, taken within two (2) hours of cessation of operation or physical control of a motor vehicle;

10

(e) While under the combined influence of alcohol and any other substance which impairs one's driving ability; or

(f) Having an alcohol concentration of 0.02 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle, if the person is under the age of twenty-one (21).

KRS 189A.010(1). These prohibitions were in effect at the time of McCarthy's arrest.[7] *See* 2016 Ky. Acts ch. 85. For prosecutions under KRS 189A.010(1)(b)

---

[7] At the time of McCarthy's arrest KRS 189A.010(5), prescribing a five-year look back, set out that one violating KRS 189A.010(1)(a), (b), (c), (d), or (e) shall:

(a) For the first offense within a five (5) year period, be fined not less than two hundred dollars ($200) nor more than five hundred dollars ($500), or be imprisoned in the county jail for not less than forty-eight (48) hours nor more than thirty (30) days, or both. Following sentencing, the defendant may apply to the judge for permission to enter a community labor program for not less than forty-eight (48) hours nor more than thirty (30) days in lieu of fine or imprisonment, or both. If any of the aggravating circumstances listed in subsection (11) of this section are present while the person was operating or in physical control of a motor vehicle, the mandatory minimum term of imprisonment shall be four (4) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of early release;

(b) For the second offense within a five (5) year period, be fined not less than three hundred fifty dollars ($350) nor more than five hundred dollars ($500) and shall be imprisoned in the county jail for not less than seven (7) days nor more than six (6) months and, in addition to fine and imprisonment, may be sentenced to community labor for not less than ten (10) days nor more than six (6) months. If any of the aggravating circumstances listed in subsection (11) of this section are present, the mandatory minimum term of imprisonment shall be fourteen (14) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of early release;

(c) For a third offense within a five (5) year period, be fined not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000) and shall be imprisoned in the county jail for not less than thirty (30) days nor more than twelve (12) months and may, in addition to fine and imprisonment, be sentenced to community labor for not less than ten (10) days nor more than twelve (12) months. If any of the aggravating circumstances listed in subsection (11) of this section are present, the

11

or (e), it is presumed that a motorist with an alcohol concentration of less than 0.04 is not under the influence of alcohol and there is no presumption either way for a motorist with an alcohol level of 0.04 or greater or less than 0.08, but the alcohol concentration may be considered with other evidence in determining guilt. KRS 189A.010(3)(a)-(b).

With DUI charges and case prosecution being dependent upon or otherwise aided by BAC levels (and detection of other substances which impair driving ability), states have created consequences for a motorist refusing to take the scientific tests used to determine BAC, typically a breath test or a blood test.[8] *Birchfield*, 136 S. Ct. at 2166. These consequences are codified in what is generally referred to as implied-consent laws. *Id.* With driving being a privilege regulated by the state, Kentucky, like other states, imposes conditions on those who choose to operate a vehicle on its roadways, one being consenting to testing for alcohol or other substances if an officer has reasonable grounds to believe the motorist is violating Kentucky's DUI statute, KRS 189A.010(1).

---

mandatory minimum term of imprisonment shall be sixty (60) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of early release;

(d) For a fourth or subsequent offense within a five (5) year period, be guilty of a Class D felony. If any of the aggravating circumstances listed in subsection (11) of this section are present, the mandatory minimum term of imprisonment shall be two hundred forty (240) days, which term shall not be suspended, probated, conditionally discharged, or subject to any other form of release.

[8] Kentucky's statute also includes a urine test. *See* KRS 189A.103(1).

*See id.; Commonwealth v. Duncan*, 483 S.W.3d 353, 355–56 (Ky. 2015); KRS

189A.103(1).

Under KRS 189A.103(1), a motorist impliedly consents to testing for

alcohol or other substances.  KRS 189A.103(1) states:

> The following provisions shall apply to any person who operates or
> is in physical control of a motor vehicle or a vehicle that is not a
> motor vehicle in this Commonwealth:
>
> (1) **He or she has given his or her consent to one (1) or more
> tests of his or her blood, breath, and urine, or combination
> thereof, for the purpose of determining alcohol concentration
> or presence of a substance which may impair one's driving
> ability**, if an officer has reasonable grounds to believe that a
> violation of KRS 189A.010(1) or 189.520(1) [(pertaining to
> operating a vehicle which is not a motor vehicle)] has occurred.[9]

(Emphasis added.)

If the motorist affirmatively refuses consent–declines to cooperate with a

test–he faces certain statutorily-defined consequences.  At the time of

McCarthy's arrest, KRS 189A.105(1) and (2)(a)1 provided:

> (1) A person's refusal to submit to tests under KRS 189A.103 shall
> result in revocation of his driving privilege as provided in this
> chapter.
>
> (2)(a) At the time a breath, blood, or urine test is requested, the
> person shall be informed:
>
> 1. That, **if the person refuses to submit to such tests, the fact
>    of this refusal may be used against him in court as evidence
>    of violating KRS 189A.010** and will result in revocation of his
>    motorist's license, **and if the person refuses to submit to the
>    tests and is subsequently convicted of violating KRS
>    189A.010(1) then he will be subject to a mandatory**

---

[9] Other than the addition of the pronouns referring to female defendants, KRS 189A.103's content has not changed since its amendment in 2000.  *See* 2007 Ky. Acts ch. 85.

**minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests**, and that if the person refuses to submit to the tests he will be unable to obtain a hardship license.[10]

(Emphasis added.) The Supreme Court's 2016 *Birchfield* decision changed the landscape for implied-consent laws such as ours by addressing the Fourth Amendment implications of both breath and blood tests relied upon by states in DUI prosecutions.

## II. *Birchfield's* Fourth Amendment Analysis

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." "The purpose of the Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's

---

[10] KRS 189A.105(2)(a) currently states:

At the time a breath, blood, or urine test is requested, the person shall be informed:

1. That, if the person refuses to submit to such tests:

   a. The fact of this refusal may be used against him or her in court as evidence of violating KRS 189A.010 and will result in suspension of his or her driver's license by the court at the time of arraignment; and

   b. Is subsequently convicted of violating KRS 189A.010(1):

   i. For a second or third time within a ten (10) year period, he or she will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he or she submits to the tests; and

   ii. His or her license will be suspended by the Transportation Cabinet.

person, house, papers, or effects." *United States v. Calandra*, 414 U.S. 338, 354 (1974). "In the usual context of a criminal trial, the defendant is entitled to the suppression of, not only the evidence obtained through an unlawful search and seizure, but also any derivative use of that evidence." *Id.* As noted above, drawing blood to test for BAC constitutes a search under the Fourth Amendment. *Schmerber,* 384 U.S. at 767–68. The pertinent question then under a Fourth Amendment analysis is whether such a search is reasonable. *Birchfield*, 136 S. Ct. at 2173. The Fourth Amendment generally requires police to obtain a valid search warrant in order for a search to be reasonable, *id.* (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)), but consent is a recognized exception which renders a warrantless search reasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

*Birchfield*, consolidating two cases from North Dakota and a case from Minnesota, addressed whether the Fourth Amendment is violated when implied-consent laws go beyond the typical penalties for noncompliance (e.g., license suspension) and attach criminal consequences to a motorist's refusal of a breath or blood test after being lawfully arrested as a DUI suspect. While common consequences of refusing a test are suspension or revocation of the motorist's license and use of the refusal of a test as evidence of likely intoxication in a DUI prosecution, a defendant facing a greater penalty for driving with an elevated BAC or for repeat violations has incentive to refuse testing. 136 S. Ct. at 2166, 2169. Some states, like North Dakota and

15

Minnesota, have made it a separate crime to refuse a breath or blood test. *Id.* at 2169-70.[11]

In each of the three *Birchfield* cases, the defendant was arrested for drunk driving and warned of the consequences of refusing the BAC test. *Id.* at 2170-72. However, each defendant responded differently to the warning. Birchfield, after being informed blood test refusal would lead to criminal punishment, refused to let his blood be drawn, was charged with a misdemeanor violation of North Dakota's refusal statute, entered a conditional guilty plea, and argued on appeal that the Fourth Amendment prohibited criminalizing his refusal to submit to the test. *Id.* at 2170-71. Beylund, upon being informed that test refusal is a crime, agreed to have his blood drawn and with a BAC level three times North Dakota's legal limit, had his license suspended for two years after an administrative hearing; he argued on appeal that his consent to the blood test was coerced by the officer's warning. *Id.* at 2172. Bernard, having been informed that refusal to submit to a BAC test is a crime, refused to take a breath test, was charged with test refusal in the first degree, and had his charges dismissed by the Minnesota District Court on the basis that the warrantless breath test was not permitted under the Fourth

---

[11] In North Dakota, in addition to mandatory addiction treatment, refusing to take blood, breath or urine tests exposed the defendant to "sentences rang[ing] from a mandatory fine of $500 (for first-time offenders) to fines of at least $2,000 and imprisonment of at least one year and one day (for serial offenders)." *Id.* at 2170. The *Birchfield* Court also noted that "test refusal in Minnesota [could] result in criminal penalties ranging from no more than 90 days' imprisonment and up to a $1,000 fine for a misdemeanor violation to seven years' imprisonment and a $14,000 fine for repeat offenders." *Id.* at 2171.

Amendment. *Id.* at 2171. After the North Dakota and Minnesota Supreme Courts rejected Fourth Amendment arguments in the defendants' respective cases, the United States Supreme Court "granted certiorari in all three cases and consolidated them . . . in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream," recognizing that the initial question was whether a motorist may be compelled to take a blood test or a breath test in the absence of a warrant. *Id.* at 2172. If a warrantless test is permissible, then a defendant's refusal to take the required test may be criminalized. *Id.* at 2173.

Upon considering the factual differences between the three cases, the Supreme Court stated:

> Despite these differences, success for all three petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate. If, on the other hand, such warrantless searches comport with the Fourth Amendment, it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant.

*Id.* at 2172 (citations omitted).

The Court began its analysis "by considering whether the [breath and blood] searches demanded in these cases were consistent with the Fourth Amendment," and particularly the states' contention that the searches were reasonable, following each defendant's arrest. *Id.* at 2173-85. Addressing for the first time whether the search-incident-to-arrest warrant exception applied

17

to a DUI defendant's breath or blood, the Court performed the Fourth Amendment reasonableness analysis and examined the degree to which the breath and blood tests intrude upon an individual's privacy and the degree to which the tests are needed to promote legitimate governmental interests. *Id.* at 2174-83.

The Court concluded categorically: "Because breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, . . . a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." *Id.* at 2185. As to blood tests, the Court considered the necessity of piercing the skin to extract a vital bodily fluid versus the ease of administering a breath test, the increased expectation of privacy in blood as compared to breath, and the information which may be obtained from a blood sample beyond a mere BAC reading. *Id.* at 2178. The Court concluded that unlike breath tests, blood tests do not qualify for categorical exception from the warrant requirement under the search-incident-to-arrest doctrine as "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Id.* at 2184. Exigent circumstances may justify a warrantless blood test in a given case but otherwise the police must seek a warrant.[12] *Id.*

---

[12] The Supreme Court confronted an exigent circumstances case soon after *Birchfield.* In *Mitchell v. Wisconsin,* 139 S. Ct. 2525 (2019), the Court addressed the constitutionality of a Wisconsin statute which authorized a warrantless blood draw from an unconscious DUI suspect incapable of providing a breath test. The Supreme Court granted review to decide "[w]hether a statute authorizing a blood draw from an

18

The *Birchfield* Court next considered the states' alternative argument that a search warrant for a blood test was unnecessary because consent was implied under their respective implied-consent statutes.

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. See, *e.g.,* [*Missouri v.*] *McNeely,* [569 U.S. 141, 160-61 (2013)] (plurality opinion); [*South Dakota v.*] *Neville,* [459 U.S. 553, 560 (1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.
>
> . . . [Applying the Fourth Amendment "reasonableness" standard,] we conclude that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense.

*Id.* at 2185-86.

Having outlined the intersection of implied-consent laws with the Fourth Amendment, the Supreme Court addressed the consequences for the three individual defendants. Given the legality of a warrantless breath test, Bernard "had no right to refuse," and was properly prosecuted for his refusal to provide a breath test. *Id.* at 2186. By contrast, Birchfield had the right to refuse a warrantless blood test and his conviction for asserting that constitutional right had to be reversed. *Id.* As for the third defendant, Beylund, who submitted to

unconscious motorist provides an exception to the Fourth Amendment warrant requirement." *Id.* at 2532. The Supreme Court found that the statute in question did not violate the Fourth Amendment provision against unreasonable searches because it fit into the exigent circumstance exception. *Id.* at 2539.

19

the blood test and was convicted, his case was remanded for an assessment of the voluntariness of his consent under the totality of the circumstances. *Id.* With this guidance, we turn to the issues in McCarthy's case.

### III. The Trial Court Properly Held That the Commonwealth Could Not Penalize McCarthy's Refusal to Submit to a Blood Test as Provided in KRS 189A.105

The first issue in this case is whether the trial court properly concluded that McCarthy could not be subject to an enhanced criminal penalty for refusal to submit to a blood test. As quoted above, KRS 189A.105(2)(a) provides that a person who refuses a test and is subsequently convicted of DUI is subject "to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests." *Birchfield* holds that because warrantless blood tests are invalid under the Fourth Amendment absent a valid exception to the warrant requirement such as exigent circumstances a defendant cannot be criminally sanctioned for refusing to consent.

The Commonwealth concedes the KRS 189A.105 sanction is a criminal penalty but maintains as it did before the trial court and Court of Appeals, that *Birchfield*'s holding is narrowly tailored to address only those state laws which attach separate criminal sanctions to refusals. Although the Commonwealth views *Birchfield* to be limited to statutes that make refusal a crime independent of any DUI charge, the Supreme Court did not make that distinction. Admittedly, *Birchfield* states at one point that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal

20

offense," 135 S. Ct. 2186, but the Court states a broader objective in granting certiorari: "We granted certiorari in all three cases and consolidated them . . . in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime **or otherwise penalized** for refusing to take a warrantless test measuring the alcohol in their bloodstream." 136 S. Ct. at 2172 (emphasis added). Later in specifically addressing implied-consent laws, the Court criticizes such laws as incapable of providing valid consent when the State "impose[s] **criminal penalties**" on the refusal to take "an intrusive blood test." *Id.* at 2185 (emphasis added). Simply put, *Birchfield*'s guidance is not limited to statutes which create separate criminal charges for refusal alone. The mandatory additional jail time imposed in KRS 189A.105 following conviction for DUI is an unauthorized criminal penalty and was properly considered as such by the trial court.

The Commonwealth also cites the Court of Appeals' analysis in *Brown*, 560 S.W.3d at 873, to persuade this Court that *Birchfield* should not apply to Kentucky's implied-consent statutory scheme because our laws are not as coercive as those in states which criminalize refusal to consent to a test regardless of whether the defendant is ultimately convicted of DUI. As noted earlier, *Brown* concluded that mandating that an accused undergo an intrusive blood test or else accrue a criminal charge was coercive while simply increasing the mandatory minimum jail sentence upon any eventual conviction of DUI was not. The Commonwealth maintains it is evident that this added penalty upon a DUI conviction would not coerce consent.

21

In this vein, the Commonwealth, citing KRS 189A.010(5)(a), points out that a refusal carries no minimum sentence on first-offense DUI, and under KRS 189A.010(5)(b), (c), and (d), respectively, refusal is just an aggravating circumstance on second, third, or fourth (or greater) DUI offenses.[13] Under KRS 189A.105(2)(a)1, only if a person is convicted of the DUI offense after they refuse the test will they be subject to the mandatory minimum sentence. The Commonwealth further notes that a person who complies with the blood or breath test is not automatically entitled to the minimum sentence; DUI penalties provide a range of fines and a range of possible jail time; and the mandatory doubling of the minimum sentence due to refusal, not adding jail time on top of the maximum possible sentence, remains within the penalties authorized for the DUI. Finally, the Commonwealth emphasizes that viewing the penalty for refusal in KRS 189A.105 as subjecting a person to increased penalties assumes that the person is entitled to the minimum sentence if they consent to the test, when in fact a jury could impose the maximum sentence regardless of whether the defendant takes the test or not.

Accepting all of these facts as true does not change our conclusion that KRS 189A.105 imposes an unauthorized penalty on a motorist's refusal to submit to a warrantless blood test. That the penalty does not apply until after the defendant is convicted of DUI does not lessen its punitive nature nor does the fact that the mandatory doubled minimum sentence is within the range of

---

[13] *See* n.7 for contents of KRS 189A.010(5) at the time of McCarthy's arrest.

potential penalties even for a person who does consent to a blood test. Here, McCarthy's penalty for refusal if convicted of violating KRS 189A.010(5)(d) would have doubled his mandatory minimum jail sentence from 120 to 240 days in jail. *See* KRS 189A.010(5)(d); KRS 189A.010(8).[14] While a defendant may or may not have an idea of the minimum sentence they are facing, a reasonable person can at least recognize from the warning that by making the choice to refuse the test, they are subject to a higher minimum penalty. Although the defendant obviously could face a sentence higher than the mandatory minimum for the DUI offense if convicted, it is absolutely clear that **the sentence will be higher** than the mandatory minimum due to the refusal. Or said another way, upon a DUI conviction, because of the refusal, the defendant is subject to a criminal penalty that would not apply otherwise, and that result is not allowed under *Birchfield.*

In closing we acknowledge that some courts have read *Birchfield* very narrowly and have concluded that it does not prohibit statutes such as ours that make refusal to consent to a blood test grounds for enhanced penalties upon conviction for DUI. *See, e.g., Maine v. LeMeunier-Fitzgerald,* 188 A.3d 183 (Me. 2018); *Vermont v. Rajda,* 196 A.3d 1108 (Vt. 2018). Other states recognize, as we do, that the Supreme Court spoke in terms of "criminal penalties" in *Birchfield,* and a criminal penalty imposed after conviction for DUI is no less a penalty than one imposed by a freestanding criminal statute. *See,*

---

[14] *See* n.2 for contents of KRS 189A.010(5)(d) and KRS 189A.010(8) at the time of McCarthy's indictment.

*e.g.*, *Pennsylvania v. Monarch*, 200 A.3d 51 (Pa. 2019); *Wisconsin v. Dalton*, 914 N.W.2d 120 (Wis. 2018); *New Mexico v. Vargas*, 404 P.3d 416 (N.M. 2017).  The trial court did not err in concluding that McCarthy could not be subjected to an enhanced penalty due to his refusal to submit to a warrantless Fourth Amendment search in the form of a blood test.

### IV. The Trial Court Properly Held That McCarthy's Refusal to Consent Could Not Be Used Against Him Pursuant to KRS 189A.105 as Evidence of His Guilt of Driving Under the Influence

Next we turn to the trial court's ruling that the Commonwealth could not use McCarthy's refusal to consent to the blood test against him at trial even though KRS 189A.105(2) specifically provides that "the fact of [a] refusal may be used against him in court as evidence of violating KRS 189A.010 [the DUI statute]."  In an excerpt from *Birchfield* quoted above, the Supreme Court observed that it had previously approved state laws attaching evidentiary consequences to a motorist's refusal to submit to a test, citing *South Dakota v. Neville,* 459 U.S. 553 (1983).

In *Neville*, the motorist refused to submit to a blood alcohol test after being warned that his refusal could result in the loss of his license.  *Id.* at 555. Apparently through oversight, the motorist was not informed that his refusal could also be used as evidence against him at trial.  *Id.* at 565.  Addressing the argument that admitting the evidence of refusal offended Neville's Fifth Amendment right against self-incrimination, the Supreme Court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it [and offered a valid choice of either submitting to the test or refuse and

24

endure the licensure and evidentiary consequences], is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *Id.* at 564. The Supreme Court further held that although the motorist was not warned that the test results could be used against him, the other warning received put the motorist on notice that other adverse consequences may result from refusing the test and thus use of the evidence of refusal after the warning comported with the fundamental fairness required by Due Process. *Id.* at 566.

Contrary to the Commonwealth's position, *Neville* does not answer the issue before us. There the Court referred to "simple blood-alcohol test[s]" as "safe, painless and commonplace," *id.* at 563, a premise certainly undermined as to blood tests after *Birchfield,* which found the intrusive tests unreasonable and held a warrant is required absent exigent circumstances, a recognized exception to the warrant requirement. Moreover, *Neville* did not involve a refusal under threat of criminal penalties. In any event and more importantly, *Neville* was focused solely on the Fifth Amendment[15] and *Birchfield* now outlines the Fourth Amendment ramifications of BAC tests. One leading commentator has noted this distinction is significant:

> While it has been established *as a Fifth Amendment matter* that a defendant being prosecuted for driving under the influence may not object to the admission in evidence against him his refusal to submit to a sobriety test at the time of arrest, what of the claim that such evidence is inadmissible as a Fourth Amendment

---

[15] Similarly*, Hager v. Commonwealth,* 702 S.W.2d 431 (Ky. 1986), cited in the concurring in part, dissenting in part opinion, is also solely focused on the Fifth Amendment.

matter?  The Court in *Birchfield* noted in passing (just as it did earlier in *McNeely*) that "evidence of the motorist's refusal is admitted as evidence of likely intoxication in a drunk-driving prosecution," and later cautioned that "nothing we say here should be read to cast doubt" on such "evidentiary consequences on motorists who refuse to comply," which has been relied upon by those post-*Birchfield* lower court decisions that have upheld admission of such refusal evidence in those circumstances.  But that assertion is misleading at best, for *Birchfield*'s emphasis on the distinction between when a defendant's refusal to submit is constitutionally significant (i.e., for a blood test absent exigent circumstances) and when it is not (i.e., for all breath tests and for other blood tests) is, by well-established pre-existing authority, also relevant to the question of whether refusal may be admitted into evidence to show defendant's guilt.  What the cases indicate is that when defendant's refusal was within the context of a recognized search-warrant-required category, then the Fourth Amendment prohibits admission of that refusal into evidence. . . . But on the other hand, when it is first determined that no warrant was required in any event (e.g., taking a breath sample), comment on the refusal is permissible.

4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.2(l) (6th ed., Thomson Reuters 2020) (footnotes and citations omitted).

As the Court of Appeals aptly noted in this case, Kentucky courts have already recognized that where a search warrant was required to conduct a search, a defendant's refusal to consent to that search cannot be used against him as evidence of guilt.  In *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky. 2005), this Court held that a defendant charged with first-degree rape could not have his refusal to consent to a warrantless search of his bodily fluids used against him at trial.  Citing cases from the United States Court of Appeals for the Ninth Circuit, including three cases noted in the LaFave treatise, we held that because the defendant was constitutionally entitled to withhold consent his exercise of that right "was privileged conduct that cannot be considered as

26

evidence of criminality." *Id.* at 761. The trial court's admission of the evidence was deemed "a violation of [Deno's] rights under the Fourth Amendment and Section 10 of the Constitution of Kentucky." *Id.* at 762.

The Commonwealth attempts to distinguish *Deno,* noting that Deno was not under arrest as McCarthy was and that the *Deno* court specifically excluded DUI cases from its analysis.[16] Neither of these points matters post-*Birchfield* because the Supreme Court has now held that a blood test cannot be constitutionally justified in DUI cases under the search-incident-to-arrest exception. Prior to *Birchfield,* many courts, including the *Deno* Court, assumed that the "incident to arrest" exception to the warrant requirement applied in the case of blood tests following DUI arrests. *Birchfield* settled that issue and thus the distinctions *Deno* made between DUI cases and non-DUI cases no longer matter. In all cases, a criminal defendant has the constitutional right to refuse consent to a blood test.

Later, in *Coulthard*, 230 S.W.3d 572, this Court confirmed its commitment to *Deno*, but recognized that the prohibition on admitting evidence of refusal to consent to a warrantless search, in some circumstances, is not absolute. In that manslaughter case, we held Coulthard's refusal to consent to fingerprint sampling could not be offered by the Commonwealth as evidence of his guilt, but it could be used for rebuttal and to impeach Coulthard's

---

[16] The *Deno* Court described the issue presented as "whether the refusal of one, other than a DUI suspect, to submit to a warrantless seizure of bodily fluids may be introduced at trial and argued as evidence of guilt." 177 S.W.3d at 761.

27

testimony that he acted in self-defense. *Id.* at 582-84. Coulthard initially claimed no knowledge of the crime. *Id.* at 582-83. As the investigation progressed, officers found fingerprints at the crime scene and asked if he would agree to fingerprinting. *Id.* at 583. Coulthard refused and later changed his story from having no knowledge of the shooting to having acted in self-defense. *Id.* The Court noted that in the context of Fifth Amendment rights the United States Supreme Court, when analyzing whether a constitutional right has been impermissibly burdened, has deemed it appropriate to consider the legitimacy of the challenged governmental practice. *Id.* at 582 (citing *Jenkins v. Anderson,* 447 U.S. 231 (1980)). Emphasizing that "[a]s the traditional truth testing devices of the adversarial process, impeachment and rebuttal are vital to a just and fair trial," the Court held those important devices should weigh heavily when counterbalancing "constitutional privilege" claims. *Id.* at 583.

> Generally, such as in *Deno,* exercising one's privilege to be free of warrantless searches is simply not probative (or has low probative value) to a determination of guilt, and thus, the defendant's right to not be penalized for exercising such a privilege is paramount. However, in circumstances when such evidence is probative for some purpose other than to simply penalize the defendant for exercising a constitutional right, then notions of fair play and the need to preserve the truth-testing functions of the adversarial process may outweigh the defendant's interest in suppressing the evidence.

*Id.* at 584 (internal citations omitted). While not admissible as evidence of Coulthard's guilt of manslaughter, his refusal was properly admitted through rebuttal evidence and through impeachment of Coulthard's testimony claiming self-defense.

28

In this case, the Commonwealth intended to introduce McCarthy's refusal of a blood test as evidence of his guilt of DUI. Indeed, that is precisely what KRS 189A.105(2) allowed but *Birchfield* now establishes that a DUI defendant has a constitutional right to withhold consent to a blood test. Under *Deno*, use of McCarthy's now-constitutionally-recognized right to refuse a blood test as evidence of guilt of DUI was improper, and unlike in *Coulthard*, nothing arose via McCarthy's defense of the charges that would have rendered it admissible as rebuttal or impeachment evidence.[17] The trial court properly held that McCarthy's refusal to consent to the blood test could not be offered as evidence of his guilt, despite the statutory statement to that effect in KRS 189A.105.

### V. As the Court of Appeals Correctly Held, the Trial Court Erred in Allowing the Commonwealth to Introduce the Refusal to Explain Its Lack of Scientific Evidence That McCarthy Was Driving Under the Influence

Although the trial court recognized that McCarthy's refusal to submit to a blood test should not be admitted as evidence of his guilt of DUI, it nevertheless was persuaded to allow the evidence to be admitted at trial. The Commonwealth insisted that jurors are aware of the scientific evidence typically available in a DUI prosecution and consequently the Commonwealth should be allowed to explain that such evidence did not exist in this case

---

[17] We recognize that the trial court allowed McCarthy to comment on the absence of scientific testing establishing his BAC, a ruling that seemed to stem from the trial court's erroneous conclusion that the Commonwealth should be able to present the refusal evidence to explain the absence of any scientific testing.

because McCarthy refused to submit to a blood test. Even though admitted ostensibly for this limited purpose, the record reflects that the refusal evidence came in without any admonition that the jury consider that evidence solely for this limited purpose.

We agree with McCarthy and the Court of Appeals that the refusal evidence was inadmissible under the principles clearly enunciated in *Deno* and *Coulthard* and should not have been accepted through the back door simply because the Commonwealth wanted to explain why it did not have scientific evidence to prove its case. This ruling eviscerated the protections accorded McCarthy's Fourth Amendment rights as recognized in *Deno* and *Coulthard*.

We also reject the Commonwealth's stated premise for introducing the evidence. The absence of scientific evidence was primarily the result of the Commonwealth's own actions or rather inactions. As recognized in *Birchfield*, officers could have properly asked McCarthy to submit to a breath test as opposed to the more invasive blood test. If he submitted to the breath test, the Commonwealth would have had the desired scientific BAC evidence and if he refused, nothing in *Birchfield, Deno* or *Coulthard*, would have precluded admission of that refusal of a breath test as evidence against him in the DUI prosecution. The difficulty the Commonwealth found itself in with regard to an absence of scientific evidence was largely its own doing.

Finally, although the refusal evidence was improperly admitted, we agree with the Court of Appeals that once admitted McCarthy was entitled to respond appropriately. He should have been allowed to raise the issue of the

30

Commonwealth's right to seek a warrant for the blood test; his refusal was not the end of the officer's options for obtaining a blood test that night, even if the officer was personally unaware of the availability of a warrant. So, the refusal evidence should never have been admitted in the first instance but once it was the trial court erred in limiting McCarthy's response to that evidence.[18]

### VI. The Erroneous Admission of the Refusal Evidence Was Not Harmless Beyond a Reasonable Doubt, Requiring Reversal of McCarthy's Conviction

Having concluded that the trial court erred by allowing the Commonwealth to introduce into evidence McCarthy's refusal to submit to the blood test, we consider whether the constitutional error was harmless beyond a reasonable doubt because, if not, the conviction must be set aside. *Chapman*, 386 U.S. at 23–24. *Chapman* advises:

> An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless. . . . [Before a federal constitutional error can be held harmless beyond a reasonable doubt] we consider whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

*Id.* (internal citation and quotation omitted).

---

[18] The Commonwealth also raises the very confusing argument that because McCarthy refused the blood test, he lacks standing to challenge the search, citing *Commonwealth v. Duncan*, 483 S.W.3d 353 (Ky. 2015). However, as we explained in *Warick v. Commonwealth*, 592 S.W.3d 276 (Ky. 2019), rather than focusing on standing, a defendant's right to raise a Fourth Amendment claim is properly analyzed under substantive Fourth Amendment doctrine. Here, McCarthy has a clear cognizable Fourth Amendment interest in the search at issue–"any compelled intrusion into the human body implicates significant, constitutionally protected privacy interests." *McNeely*, 569 U.S. at 159; *accord Birchfield*, 136 S. Ct. at 2178. Consequently, McCarthy's claim for relief because of an alleged infringement of his constitutional right to refuse consent to a warrantless search of his blood is one properly before the courts.

31

"The Court has the power to review the record *de novo* in order to determine an error's harmlessness. In so doing, it must be determined whether the [Commonwealth] has met its burden of demonstrating that the admission" of McCarthy's refusal to submit to the blood test did not contribute to McCarthy's conviction. *Arizona v. Fulminante*, 499 U.S. 279, 295–96 (1991) (internal citations omitted). "The admission of [the refusal is] quantitatively assessed in the context of other evidence presented in order to determine whether its admission is harmless beyond a reasonable doubt." *Id.* at 280 (citation omitted). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous," but "to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403 (1991).

Our precedent acknowledges the reasonableness of inferring that one is guilty of being intoxicated when he refuses to take a BAC test, the belief being that the accused sober person would take a test to provide evidence in his favor, while the accused intoxicated person would refuse a test to avoid producing evidence against himself. *See Cook v. Commonwealth*, 129 S.W.3d 351, 360 (Ky. 2004). Nevertheless, a refusal may not have a relationship to guilt. When a defendant decides to testify, he may be asked his reason for refusing a test, and that reason may have no relation to his consciousness of guilt. But when a defendant decides not to testify, even if the prosecution does not explicitly comment that the defendant's refusal of the test is an indication

32

of guilt, without an admonition otherwise,[19] the jury is left with the task of drawing reasonable inferences from the evidence.

Given the jury could reasonably infer McCarthy's guilt from Officer Fleury's testimony that after arresting McCarthy he refused the test, we must assess the admission of the refusal in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. We consider various factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (citations omitted). In order to convict McCarthy, the Commonwealth had the burden to prove beyond a reasonable doubt that while operating the motor vehicle, McCarthy was under the influence of alcohol and/or any other substance(s) which impaired his driving ability.

Officer Fleury testified that he was parked in an alley near a bar and shortly after he heard a vehicle spinning tires on gravel, he saw a vehicle traveling at a high rate of speed from the bar's parking lot into another parking

---

[19] Although the trial court discussed giving a limiting instruction during the hearing of McCarthy's motion to exclude his refusal from evidence, a KRE 105 admonition was not requested during trial. Without the issue before us, we do not address whether such an admonition would have cured any error from the evidence as introduced.

33

lot, turn onto the roadway, fishtail, almost lose control, and continue to travel at a high rate of speed down the street. Officer Fleury caught up with the vehicle which McCarthy was driving, and McCarthy turned onto a side street and stopped.

Officer Fleury described his initial assessment of McCarthy which included red glassy eyes, a little bit of slurred speech, being a little lethargic, a pungent smell of alcohol coming from the vehicle, and the smell of alcohol present when McCarthy was removed from the vehicle. He described McCarthy's difficulties on the field sobriety tests, including difficulties on the three eye tests, such as jerkiness and lack of smooth pursuit in the eyes; not being able to maintain balance on one leg without swaying and using his arms for balance and contemporaneously losing count, repeating and jumbling numbers; swaying, using his arms for balance, and not being able to continuously walk in a straight line because of stopping and also stepping off the line. The Commonwealth played a video of the stop and field sobriety tests for the jury and the jury requested to view it a second time during deliberation. The driving behaviors which caused Officer Fleury to stop McCarthy were not part of the video.

Officer Fleury was cross-examined about McCarthy's driving behavior shown on the video, driving which did not indicate impairment. Defense counsel, while playing the video, also questioned Officer Fleury about his interpretation of McCarthy's field sobriety test behavior, specifically what he viewed as indicating impairment. Officer Fleury explained that his description

34

of McCarthy hopping referred to McCarthy moving his foot in order to maintain his balance and, at one point, his assessment of slurred speech came from McCarthy's change in pitch.

Three witnesses who spent time with McCarthy that evening testified. None of them knew McCarthy was prescribed pain medicine or was aware if McCarthy was taking any, but all three testified they did not observe McCarthy drinking alcohol that evening. One witness who did not go to the bar testified McCarthy stated he was going to call his friends and offer to be a designated driver that evening. Two of the witnesses went to the bar with McCarthy about 11:00 p.m., one of whom had not been drinking alcohol and was sober when the stop occurred. That witness testified that he would not have ridden with McCarthy if he was impaired and as a licensed driver, he could have driven. Although the jury heard on the video McCarthy tell Officer Fleury during the 1:00 a.m. stop that he went to the bar to pick up his friends, the two witnesses testified that was not the circumstance. The jury also heard McCarthy provide inconclusive answers to Officer Fleury's question as to whether he had been drinking before McCarthy denied that he had been drinking.

The Commonwealth during its opening statement informed the jury that it would not be presenting BAC results as part of its evidence of impairment because McCarthy refused the test. During trial, the Commonwealth introduced McCarthy's refusal to take the test. Because McCarthy did not testify, his reason for refusing the blood test was not offered and without an

35

admonition from the trial court, the jury could reasonably infer that McCarthy refused the blood test because he was intoxicated.

On its review, the Court of Appeals concluded that admitting McCarthy's refusal was not harmless beyond a reasonable doubt "in light of the weak evidence used to convict" McCarthy. Having considered the record, we find this a close case. With the video evidence, the jury was able to see some of McCarthy's driving behavior and, except for McCarthy's eye movement during the eye specific tests, McCarthy's field sobriety performance, which Officer Fleury relied upon to arrest McCarthy. McCarthy's performance was not perfect, but defense counsel challenged Officer Fleury's interpretation of the behaviors he viewed as indicative of impairment and the fact that McCarthy did not "fail" any test.

Under the standard for determining whether admission of the blood test refusal into evidence must result in a reversal of McCarthy's conviction–is there a reasonable possibility that the evidence complained of might have contributed to the conviction–we agree with the Court of Appeals. Officer Fleury's testimony was the foundation of the Commonwealth's case and his testimony about the refusal was not cumulative. McCarthy chose not to testify, which left the jury, absent an admonition to the contrary, free to infer McCarthy's consciousness of guilt from the refusal. With the Commonwealth's evidence being less than overwhelming and McCarthy having credible witnesses in his favor, a reasonable possibility exists that the inference of guilt associated with the refusal tainted the jury's view of McCarthy's behavior

36

during the stop and performance on the field sobriety tests, contributing to his conviction. Under these circumstances, we cannot say the erroneous admission of the refusal evidence was harmless beyond a reasonable doubt.

## CONCLUSION

For the foregoing reasons, the Court of Appeals' decision is affirmed, and this matter is remanded to Daviess Circuit Court for further proceedings consistent with this Opinion.

All sitting. Minton, C.J.; Keller, Lambert, and Nickell, JJ., concur. VanMeter, J., concurring in part and dissenting in part by separate opinion in which Conley, J., joins.

VANMETER, J., CONCURRING IN PART AND DISSENTING IN PART. Respectfully, I concur in part and dissent in part. I agree that McCarthy's refusal to permit the blood draw cannot be used to enhance his DUI penalty. I dissent however from so much of the majority opinion as holds that McCarthy's refusal cannot be admitted into evidence, as statutorily permitted under KRS 189A.105. The majority opinion is predicated largely on an expansive interpretation of *Birchfield v. North Dakota,* 136 S. Ct. 2160 (2016). At issue in *Birchfield* was whether the Fourth Amendment permitted North Dakota to criminalize Birchfield's refusal to submit to a chemical test, as a stand-alone act, in an effort to coerce his acquiescence. *Id.* at 2185. While the Court distinguished between blood and breath tests, significantly, it stated,

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. *See, e.g.,*

37

> *[Missouri v.] McNeely,* [569 U.S. \_\_\_\_, 133 S. Ct. 1552, 1565–66
> (2013)] (plurality opinion); *Neville, supra,* at 560, 103 S. Ct. 916.
> **Petitioners do not question the constitutionality of those laws,
> and nothing we say here should be read to cast doubt on them.**

136 S. Ct. at 2185 (emphasis added). Two points. First, the Supreme Court explicitly tells us that the evidentiary consequence of McCarthy's refusal has no constitutional implication. The majority opinion therefore errs in imposing one. And second, if an evidentiary prohibition exists, that prohibition must be found in our state law. In my view, the majority erroneously extrapolates such a prohibition primarily from *Deno v. Commonwealth,* 177 S.W.3d 753 (Ky. 2005).

Without unduly lengthening this opinion, suffice to note that in *Deno,* this Court drew valid distinctions between its facts and those in *Commonwealth v. Hager,* 702 S.W.2d 431 (Ky. 1986), involving a DUI arrest. In *Hager,* this Court held as constitutional the ability to comment on a defendant's refusal to submit to a blood-alcohol test. *Id.* at 432 (citing *South Dakota v. Neville,* 459 U.S. 553 (1983)). Admittedly, the test in *Hager* was a breath test, but the *Deno* court's distinction was not based on the type of test, breath or blood. Rather, it was based on the non-exigent circumstances of the police investigation of Deno and the fact that he was not then under arrest. 177 S.W.3d at 760-61. In this case, as in *Hager,* McCarthy was under arrest and exigent circumstances existed.

Finally, I agree with the majority, as recognized in *Coulthard v. Commonwealth,* 230 S.W.3d 572 (Ky. 2007), that the prohibition on the admission into evidence of a refusal to consent to a warrantless search is not

38

absolute. While the majority accurately relates the facts in *Coulthard*, I would extend its holding to DUI arrests/refusals, as recognized in both *Hager* and *Deno*, and give effect to the legislative policy as expressed in KRS 189A.105.

I would reverse the Court of Appeals and affirm the Daviess Circuit Court's judgment of conviction of McCarthy.

Conley, J., joins.

COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General


COUNSEL FOR APPELLEE:

Kathleen Kallaher Schmidt
Erin Hoffman Yang
Assistant Public Advocates